COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-04-093-CR

 

 

CLAUDE EMERY THOMAS                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.                   
Introduction

            Appellant Claude Emery Thomas appeals from his conviction
for murder.  In two issues, Appellant
argues that the evidence is factually insufficient to support his conviction
and that the trial court erred by allowing the prosecutor ask a witness about
an unrelated crime at the punishment phase of trial.  We affirm.








II.                
Factual and
Procedural Background

            Eric Baker was killed by a shotgun blast to the head
while standing on Bomar Street in Fort Worth on the evening of November 13,
2002.  Tomorrow Taylor witnessed the
crime.  She testified that while she and
Baker were standing in the street, a pickup truck containing two white males
backed past them down Bomar Street.  The
truck stopped a short distance from them, and Taylor saw the passenger get out
and walk some distance away; she did not see the passenger get back inside the
truck.  Taylor testified that after a Asecond or two@
the truck pulled up to where she and Baker were standing.  The driver rolled down his window and Taylor
saw a shotgun.  Taylor ran for her life
and hid in a ditch.  As she ran, she
heard a gunshot.  Taylor hid until the
truck drove away, then she left the area by running through the parking lot of
the adjacent Valley View Motel.  At the
time of trial, Taylor could not identify the men, nor could she describe the
truck other than by saying that it had a stripe down the side.  She testified that at the time of the
shooting there was only one person in the truck. 








Daniel Hawkins, the night manager of the Valley
View Motel, heard what sounded like three or four gunshots at about 8:00 in the
evening.  About a minute later, he saw a
red and white pickup occupied by two white males drive through the motel
parking lot.  He tried to read the truck=s license plate number, but the front
license plate was missing, and the rear plate was obscured.  Hawkins testified that AI just saw two white males and one of
them -- one of them looked like they had their shirt off, and wearing some
glasses. . . . I want to say the driver had the glasses on.@ 
Video cameras at the motel recorded the truck passing through the parking
lot.  

Sheryl Bodon and her husband, who are affiliated
with the Code Blue program, were patrolling the area around the crime scene on
the evening of the shooting.  At about
8:15 P.M., they found Baker lying in a pool of blood on the side of Bomar
Street and called 911.  Baker was alive
when they found him but later died from the gunshot wound. 








A little after 8:00 P.M., police officer J.A.
Farah was patrolling East Lancaster Avenue. 
About a block west of the Valley View Motel, he saw a westbound red and
white pickup commit a traffic violation. 
He also noticed that the truck=s
license plate was obscured by a Dr. Pepper bottle and a cup. Farah initiated a
traffic stop.  The truck stopped at an
angle to the street in such a way that the passenger side was hidden from Farah=s view. 
The obscured license plate and the odd angle at which the truck stopped
aroused Farah=s
suspicions, and he called for backup. 
Farah approached the passenger side of the vehicle while another
officer, Amy Rodriguez, approached the driver. Farah saw that the truck=s glove box was open and ordered the
passenger to close it.  When the
passenger complied, Farah saw a shotgun that had been hidden by the open glove
box door.  Farah and Rodriguez removed
the driver and the passenger from the truck and ultimately arrested them.  They identified Appellant as the driver and
his brother, Billy Thomas, as the passenger. Rodriguez testified that Billy was
wearing glasses when he was arrested. 

A search of the truck revealed two shotguns and
several shotgun shells.  Ballistics tests
later determined that one of the shotguns was the weapon used to kill
Baker.  The murder weapon had been
reloaded.  Police found Baker=s blood spattered on the driver=s side of the truck.  Police also found gunshot residue inside the
truck and on the clothing of Appellant and his brother but not their
hands.  Appellant=s
hands were dirty when they were tested for gunshot residue.  The State=s
gunshot residue expert testified that A[a]ny
washing of the hands will remove@
gunshot residue, that gunshot residue can easily be transferred from one
surface to another, and that the presence of gunshot residue on a person=s clothing did not prove that the
person had fired a gun.  Police did not
recover any useable fingerprint evidence from the gun that fired the fatal
shot. 

A grand jury indicted Appellant for murder.[2]  His case was tried to a jury. The trial court
charged the jury on murder and the law of parties.  The jury returned a general verdict of guilty
and assessed punishment at life in prison. The trial court entered judgment
accordingly.








III.              
Discussion

            a)         Factual sufficiency

            In his first issue, Appellant contends that the evidence
is factually insufficient to support his conviction.  Appellant concedes that the evidence Aprovides strong proof@ that either Appellant or his brother
shot Baker, but he argues that the evidence is factually insufficient for a
jury to determine beyond a reasonable doubt which brother shot the victim;
therefore, argues Appellant, he is entitled to a new trial.  While we agree that the evidence is factually
insufficient to prove that Appellant shot Baker, we conclude that it is factually
sufficient to convict him as a party to the crime.








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment, weighing all of the evidence, the contrary evidence is so strong that
guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 
 In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that
of the fact finder.  Zuniga, 144
S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).








Under the law of parties, a
person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both.  Tex. Penal Code Ann. ' 7.01(a) (Vernon 2003).  A
person is criminally responsible for an offense committed by the conduct of
another if, acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Id.
' 7.02(a)(2).  Each party to an
offense may be charged with commission of the offense.  Id. ' 7.01(b).








Circumstantial evidence alone
may be used to prove that one is a party to an offense.  Wygal v. State, 555 S.W.2d 465, 469
(Tex. Crim. App. 1977).  In determining
whether the accused was a party, it is proper to look to events occurring before,
during, and after the commission of the offense.  Cordova v. State, 698 S.W.2d 107, 111
(Tex. Crim. App. 1985), cert. denied, 476 U.S. 1101 (1986).  While mere presence at or near the scene of a
crime is not alone sufficient to prove that a person was a party to the
offense, it is a circumstance tending to prove guilt, which combined with other
facts, may suffice to show that the accused was a participant.  Beardsley v. State, 738 S.W.2d 681, 685
(Tex. Crim. App. 1987).  Similarly, while
flight alone is not dispositive of guilt, evidence of flight is a circumstance
from which an inference of guilt may be drawn. Valdez v. State, 623
S.W.2d 317, 321 (Tex. Crim. App. 1979) (op. on reh=g).  In a circumstantial evidence
case, it is not necessary that every fact point directly and independently to
the guilt of the accused; rather, it is enough if the conclusion is warranted
by the combined and cumulative force of all the incriminating circumstances.  See Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993), cert. denied, 511 U.S. 1046 (1994).      The evidence in this case points to
Appellant or his brother as the person who shot Baker but is factually
insufficient for a rational trier of fact to conclude that Appellant pulled the
trigger.  The only evidence tending to
prove that Appellant was the shooter is Taylor=s testimony that the pickup=s driver fired the shot, coupled with Farah and Rodriguez=s testimony that Appellant was driving the pickup at the time of the
traffic stop.  On the other hand, Hawkins
testified that immediately after the shooting, the truck was driven by  a man wearing glasses, and Rodriguez
testified that Appellant=s brother
was wearing glasses at the time of his arrest. 
The record is unclear as to how much time elapsed between the shooting
and the traffic stop and is silent as to what Appellant and his brother might
have done in the meantime.  The gunshot
residue on their clothing is inconclusive. 
The testimony that Appellant=s hands were dirty yet tested negative for gunshot residue suggests
that he did not fire the shotgun.  We
hold that the evidence is factually insufficient to support Appellant=s conviction as the shooter.








But the circumstantial
evidence is factually sufficient to support Appellant=s conviction as a party to the crime. 
The evidence tends to prove that Appellant was at the scene of the crime
and that he fled with his brother through the motel parking lot.  The facts that Appellant was driving his
truck without a front license plate and with the rear license plate obscured,
had the reloaded murder weapon in the truck=s front seat between himself and his brother, and stopped his truck at
an angle so that his brother was shielded from Officer Farah=s view tend to indicate a consciousness of guilt on Appellant=s part.  While Appellant
correctly observes that there is no direct evidence that he solicited,
encouraged, directed, or aided in the commission of the crime, the
circumstantial evidence is factually sufficient to sustain his conviction.  We overrule Appellant=s first issue.

A.              
Evidence
of an unrelated crime at the punishment phase of trial

        In his second issue,
Appellant argues that the trial court erred by allowing the prosecutor to ask
Appellant=s cousin
whether he had discussed the Washington, D.C.-area sniper shootings with
Appellant.  We agree that the trial court
erred by admitting the evidence but conclude that the error was harmless.








We review the trial court=s decision to admit or exclude evidence under an abuse of discretion
standard.  Burden v. State, 55
S.W.3d 608, 615 (Tex. Crim. App. 2001); Green v. State, 934 S.W.2d 92,
101‑02 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997);
Montgomery v. State, 810 S.W.2d 372, 379‑80 (Tex. Crim. App.
1990).  The test for abuse of discretion
is not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court=s action; rather, it is a question of whether the court acted without
reference to any guiding rules or principles, and the mere fact that a trial
court may decide a matter within its discretionary authority differently than
an appellate court does not demonstrate such an abuse.  Montgomery, 810 S.W.2d at 391 (op. on
reh=g).  We will not reverse a trial
court=s ruling on the admission of evidence as long as the ruling is within
the zone of reasonable disagreement.  Id.

Determining what evidence
should be admitted at the punishment phase of a non-capital felony offense is a
function of policy rather than a question of logical relevance.  Sunbury v. State, 88 S.W.3d 229, 233
(Tex. Crim. App. 2002).  Deciding what
punishment to assess is a normative process, not intrinsically factbound.  Id.  Because
the material issue at punishment is so indistinct, relevancy of proffered
evidence cannot be determined by deductive processes.  Id. 
While Rule 401 is helpful to determining what should be admissible
under article 37.07 ' 3(a), it is
not a perfect fit in the punishment context. 
Id.; see Tex. Code Crim.
Proc. Ann. art. 37.03 ' 3(a) (Vernon Supp. 2005). 
Rather, determining what is relevant in the punishment context should be
a question of what is helpful to the jury in determining the appropriate
sentence for a particular defendant in a particular case.  Id. 

At the punishment phase of
trial, Appellant called his cousin, Charles Burton, as a witness.  The following colloquy took place during the
State=s cross-examination:

[PROSECUTOR]:  What
was the big news story in early November of 1902 ‑‑ I=m
sorry, 2002, across the country?

 

[DEFENSE COUNSEL]:  Your Honor, I am going to object.

 

THE WITNESS:  I have no idea ‑‑

 








THE COURT:  Wait a minute.  When she stands up, you can=t
talk.

 

THE WITNESS:  Oh, I=m
sorry.

 

THE COURT:  I got to hear what
she is saying.

 

[DEFENSE COUNSEL]:  I=m going to object to him
asking about a news story.

 

THE COURT: 
All right.  Legal objection?

 

[DEFENSE COUNSEL]:  Relevance.

 

THE COURT: 
Relevance?

 

[PROSECUTOR]: 
I=ll
rephrase.

 

THE COURT: 
Rephrase.  That=s
sustained.

 

Q.   (By
[Prosecutor])  In early November of 2002,
did you have a discussion with Claude Thomas with regard to the snipers up in
the Washington, D.C, area?

 

[DEFENSE COUNSEL]:  And I=ll renew the objection,
relevance.

 

THE COURT: 
I=ll
overrule that.

 

[DEFENSE COUNSEL]:  I will also renew my objection under 403, any
probative value, prejudicially outweighed.

 

THE COURT: 
I=ll
overrule that also.  You can answer that.

 

THE WITNESS: 
Answer what he just asked me?

 

THE COURT: 
Yes.  Do you recall the question?

 

THE WITNESS:  Repeat the
question, please.

 

Q.   (By
[Prosecutor])  Did you and your good
friend Claude talk about the sniper shootings up in the Washington, D.C, area?








 

A.   Yeah,
I believe we did.  Yeah, I have talked to
a lot of people about it.  Yeah, it was a
big thing, yes, sir.

 

Q.   And
that was about the time Mr. Eric Baker was killed, was it not?

 

A.   Yeah,
I think ‑‑ I think so, yeah. 
It was shortly after that or something.

 

[PROSECUTOR]:  Thank you, sir. 

 

Immediately after this colloquy, both Appellant
and the State rested and closed.  Neither
party mentioned the Washington, D.C. sniper shootings during argument.

1.                 
Relevancy








            To
determine whether the trial court erred by allowing this line of testimony, we
need look no further than the threshold question of whether the  testimony was helpful to the jury in
determining the appropriate sentence for this particular defendant in this
particular case.  Nothing in the record
before us suggests that shooting for which the jury convicted Appellant was in
any way related to, similar to, or influenced by the D.C. sniper shootings.  We cannot conceive how this testimony would
be helpful to the jury in determining an appropriate sentence for Appellant=s role in Baker=s
murder.  Indeed, the circumstances lead
us to conclude that the prosecutor interjected the D.C. shootings in an attempt
to lead the jury to impose an inappropriate sentence for Appellant based
on a wholly unrelated case.  We hold that
the trial court abused its discretion by allowing the prosecutor to question
Appellant=s cousin
about the D.C. shootings over Appellant=s
relevancy objection.

2.                 
Harm analysis

            Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2. 
Generally, the erroneous admission or exclusion of evidence is
non-constitutional error governed by rule 44.2(b) if the trial court=s ruling merely offends the rules of evidence.  See Solomon v. State, 49 S.W.3d 356,
365 (Tex. Crim. App. 2001).  Under Rule
44.2(b), we are to disregard the error unless it affected appellant=s substantial rights.  Id.  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s verdict.  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall v.
State, 961 S.W.2d 639, 643 (Tex. App.CFort Worth 1998, pet. ref=d).  In making this
determination, we review the record as a whole.  See Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).  If we have Aa grave doubt@ that the
result was free from the substantial influence of the error, then we must
reverse.  Burnett v. State, 88
S.W.3d 633, 637 (Tex. Crim. App. 2002).  AGrave doubt@ means that Ain the judge=s mind, the
matter is so evenly balanced that he feels himself in virtual equipoise as to
the harmlessness of the error.@  Id. at 637‑38.








In this case, the total
disconnect between the murder of Eric Baker and D.C. sniper shootings tends to
attenuate any possibility of harm arising from the trial court=s erroneous admission of testimony regarding the latter crime.  The testimony at issue was so utterly
irrelevant to the question before the jury that it is difficult to see how it
could influence the jury=s
verdict.  The lack of detail about the
D.C. sniper shootings, the absence of any evidentiary or logical link between
those shootings and the murder of Eric Baker, and the fact that the prosecutor
did not emphasize or even mention the D.C. shootings in argument weigh against
a finding of harm.

The record as a whole tends
to support the punishment assessed by the jury. 
While Appellant=s witnesses
at the punishment phase testified that he had no felony convictions, was a hard
worker, and did not use drugs or alcohol, they also testified that the victim
was a stranger to him.  The evidence
adduced at the guilt/innocence phase supports the conclusion that Baker was the
victim of a random but cold-blooded and deliberate act of extreme,
unpredictable, and senseless violence.

Having reviewed the record as
a whole, we do not find ourselves in Agrave doubt@ that the
erroneously admitted testimony had a substantial influence on the jury=s verdict of life imprisonment. 
See id. at 637-38. 
We therefore hold that the error in admitting the testimony was
harmless.  We overrule Appellant=s second issue.








IV.             
Conclusion

            Having
overruled both of Appellant=s
issues, we affirm the judgment of the trial court.  See Tex.
R. App. P. 43.2(a).

 

 

ANNE GARDNER

JUSTICE

 

PANEL F:    CAYCE, C.J.; GARDNER and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
November 10, 2005











[1]See Tex. R. App. P. 47.4.





[2]The
record suggests that the grand jury also indicted Appellant=s
brother for murder.