THOMAS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-093-CR

CLAUDE EMERY THOMAS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Appellant Claude Emery Thomas appeals from his conviction for murder.  In two issues, Appellant argues that the evidence is factually insufficient to support his conviction and that the trial court erred by allowing the prosecutor ask a witness about an unrelated crime at the punishment phase of trial.  We affirm.

Factual and Procedural Background

Eric Baker was killed by a shotgun blast to the head while standing on Bomar Street in Fort Worth on the evening of November 13, 2002.  Tomorrow Taylor witnessed the crime.  She testified that while she and Baker were standing in the street, a pickup truck containing two white males backed past them down Bomar Street.  The truck stopped a short distance from them, and Taylor saw the passenger get out and walk some distance away; she did not see the passenger get back inside the truck.  Taylor testified that after a “second or two” the truck pulled up to where she and Baker were standing.  The driver rolled down his window and Taylor saw a shotgun.  Taylor ran for her life and hid in a ditch.  As she ran, she heard a gunshot.  Taylor hid until the truck drove away, then she left the area by running through the parking lot of the adjacent Valley View Motel.  At the time of trial, Taylor could not identify the men, nor could she describe the truck other than by saying that it had a stripe down the side.  She testified that at the time of the shooting there was only one person in the truck. 

Daniel Hawkins, the night manager of the Valley View Motel, heard what sounded like three or four gunshots at about 8:00 in the evening.  About a minute later, he saw a red and white pickup occupied by two white males drive through the motel parking lot.  He tried to read the truck’s license plate number, but the front license plate was missing, and the rear plate was obscured.  Hawkins testified that “I just saw two white males and one of them -- one of them looked like they had their shirt off, and wearing some glasses. . . . I want to say the driver had the glasses on.”  Video cameras at the motel recorded the truck passing through the parking lot.  

Sheryl Bodon and her husband, who are affiliated with the Code Blue program, were patrolling the area around the crime scene on the evening of the shooting.  At about 8:15 P.M., they found Baker lying in a pool of blood on the side of Bomar Street and called 911.  Baker was alive when they found him but later died from the gunshot wound. 

A little after 8:00 P.M., police officer J.A. Farah was patrolling East Lancaster Avenue.  About a block west of the Valley View Motel, he saw a westbound red and white pickup commit a traffic violation.  He also noticed that the truck’s license plate was obscured by a Dr. Pepper bottle and a cup. Farah initiated a traffic stop.  The truck stopped at an angle to the street in such a way that the passenger side was hidden from Farah’s view.  The obscured license plate and the odd angle at which the truck stopped aroused Farah’s suspicions, and he called for backup.  Farah approached the passenger side of the vehicle while another officer, Amy Rodriguez, approached the driver. Farah saw that the truck’s glove box was open and ordered the passenger to close it.  When the passenger complied, Farah saw a shotgun that had been hidden by the open glove box door.  Farah and Rodriguez removed the driver and the passenger from the truck and ultimately arrested them.  They identified Appellant as the driver and his brother, Billy Thomas, as the passenger. Rodriguez testified that Billy was wearing glasses when he was arrested. 

A search of the truck revealed two shotguns and several shotgun shells.  Ballistics tests later determined that one of the shotguns was the weapon used to kill Baker.  The murder weapon had been reloaded.  Police found Baker’s blood spattered on the driver’s side of the truck.  Police also found gunshot residue inside the truck and on the clothing of Appellant and his brother but not their hands.  Appellant’s hands were dirty when they were tested for gunshot residue.  The State’s gunshot residue expert testified that “[a]ny washing of the hands will remove” gunshot residue, that gunshot residue can easily be transferred from one surface to another, and that the presence of gunshot residue on a person’s clothing did not prove that the person had fired a gun.  Police did not recover any useable fingerprint evidence from the gun that fired the fatal shot. 

A grand jury indicted Appellant for murder.
(footnote: 2)  His case was tried to a jury. The trial court charged the jury on murder and the law of parties.  The jury returned a general verdict of guilty and assessed punishment at life in prison. The trial court entered judgment accordingly.

Discussion

Factual sufficiency

In his first issue, Appellant contends that the evidence is factually insufficient to support his conviction.  Appellant concedes that the evidence “provides strong proof” that either Appellant or his brother shot Baker, but he argues that the evidence is factually insufficient for a jury to determine beyond a reasonable doubt which brother shot the victim; therefore, argues Appellant, he is entitled to a new trial.  While we agree that the evidence is factually insufficient to prove that Appellant shot Baker, we conclude that it is factually sufficient to convict him as a party to the crime.

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Under the law of parties, a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. 
 Tex. Penal Code Ann.
 § 7.01(a) (Vernon 2003).  A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.
  Id.
 § 7.02(a)(2).  Each party to an offense may be charged with commission of the offense.  
Id.
 § 7.01(b).

Circumstantial evidence alone may be used to prove that one is a party to an offense.  
Wygal v. State
, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977).  In determining whether the accused was a party, it is proper to look to events occurring before, during, and after the commission of the offense.  
Cordova v. State
, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), 
cert. denied
, 476 U.S. 1101 (1986).  While mere presence at or near the scene of a crime is not alone sufficient to prove that a person was a party to the offense, it is a circumstance tending to prove guilt, which combined with other facts, may suffice to show that the accused was a participant.
  Beardsley v. State
, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).  Similarly, while flight alone is not dispositive of guilt, evidence of flight is a circumstance from which an inference of guilt may be drawn. 
Valdez v. State
, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979) (op. on reh’g).  In a circumstantial evidence case, it is not necessary that every fact point directly and independently to the guilt of the accused; rather, it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. 
 See Johnson v. State
, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1046 (1994).

 The evidence in this case points to Appellant or his brother as the person who shot Baker but is factually insufficient for a rational trier of fact to conclude that Appellant pulled the trigger.  The only evidence tending to prove that Appellant was the shooter is Taylor’s testimony that the pickup’s driver fired the shot, coupled with Farah and Rodriguez’s testimony that Appellant was driving the pickup at the time of the traffic stop.  On the other hand, Hawkins testified that immediately after the shooting, the truck was driven by  a man wearing glasses, and Rodriguez testified that Appellant’s brother was wearing glasses at the time of his arrest.  The record is unclear as to how much time elapsed between the shooting and the traffic stop and is silent as to what Appellant and his brother might have done in the meantime.  The gunshot residue on their clothing is inconclusive.  The testimony that Appellant’s hands were dirty yet tested negative for gunshot residue suggests that he did not fire the shotgun.  We hold that the evidence is factually insufficient to support Appellant’s conviction as the shooter.

But the circumstantial evidence is factually sufficient to support Appellant’s conviction as a party to the crime.  The evidence tends to prove that Appellant was at the scene of the crime and that he fled with his brother through the motel parking lot.  The facts that Appellant was driving his truck without a front license plate and with the rear license plate obscured, had the reloaded murder weapon in the truck’s front seat between himself and his brother, and stopped his truck at an angle so that his brother was shielded from Officer Farah’s view tend to indicate a consciousness of guilt on Appellant’s part.  While Appellant correctly observes that there is no direct evidence that he 
solicited, encouraged, directed, or aided in the commission of the crime, the circumstantial evidence is factually sufficient to sustain his conviction.  We overrule Appellant’s first issue.

Evidence of an unrelated crime at the punishment phase of trial

In his second issue, Appellant argues that the trial court erred by allowing the prosecutor to ask Appellant’s cousin whether he had discussed the Washington, D.C.-area sniper shootings with Appellant.  We agree that the trial court erred by admitting the evidence but conclude that the error was harmless.

We review the trial court’s decision to admit or exclude evidence under an abuse of discretion standard.  
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); 
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1200 (1997); 
Montgomery
 
v. State
, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990).  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court’s action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse.  
Montgomery
, 810 S.W.2d at 391 (op. on reh’g).  We will not reverse a trial court’s ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement.  
Id
.

Determining what evidence should be admitted at the punishment phase of a non-capital felony offense is a function of policy rather than a question of logical relevance.  
Sunbury v. State,
 88 S.W.3d 229, 233 (Tex. Crim. App. 2002).  Deciding what punishment to assess is a normative process, not intrinsically factbound. 
 Id.  
Because the material issue at punishment is so indistinct, relevancy of proffered evidence cannot be determined by deductive processes.  
Id.  
While Rule 401 is helpful to determining what should be admissible under article 37.07 § 3(a), it is not a perfect fit in the punishment context.  
Id.; see 
Tex. Code Crim. Proc. Ann.
 art. 37.03 § 3(a) (Vernon Supp. 2005).  Rather, determining what is relevant in the punishment context should be a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.  
Id.
 

At the punishment phase of trial, Appellant called his cousin, Charles Burton, as a witness.  The following colloquy took place during the State’s cross-examination:

[PROSECUTOR]: What was the big news story in early November of 1902 -- I’m sorry, 2002, across the country?

[DEFENSE COUNSEL]:  Your Honor, I am going to object.

THE WITNESS:  I have no idea --

THE COURT:  Wait a minute.  When she stands up, you can’t talk.

THE WITNESS:  Oh, I’m sorry.

THE COURT:  I got to hear what she is saying.

[DEFENSE COUNSEL]:  I’m going to object to him asking about a news story.

THE COURT:  All right.  Legal objection?

[DEFENSE COUNSEL]:  Relevance.

THE COURT:  Relevance?

[PROSECUTOR]:  I’ll rephrase.

THE COURT:  Rephrase.  That’s sustained.

Q.   (By [Prosecutor])  In early November of 2002, did you have a discussion with Claude Thomas with regard to the snipers up in the Washington, D.C, area?

[DEFENSE COUNSEL]:  And I’ll renew the objection, relevance.

THE COURT:  I’ll overrule that.

[DEFENSE COUNSEL]:  I will also renew my objection under 403, any probative value, prejudicially outweighed.

THE COURT:  I’ll overrule that also.  You can answer that.

THE WITNESS:  Answer what he just asked me?

THE COURT:  Yes.  Do you recall the question?

THE WITNESS:  Repeat the question, please.

Q.   (By [Prosecutor])  Did you and your good friend Claude talk about the sniper shootings up in the Washington, D.C, area?

A.   Yeah, I believe we did.  Yeah, I have talked to a lot of people about it.  Yeah, it was a big thing, yes, sir.

Q.   And that was about the time Mr. Eric Baker was killed, was it not?

A.   Yeah, I think -- I think so, yeah.  It was shortly after that or something.

[PROSECUTOR]:  Thank you, sir. 

Immediately after this colloquy, both Appellant and the State rested and closed.  Neither party mentioned the Washington, D.C. sniper shootings during argument.

Relevancy

To determine whether the trial court erred by allowing this line of testimony, we need look no further than the threshold question of whether the  testimony was helpful to the jury in determining the appropriate sentence for this particular defendant in this particular case.  Nothing in the record before us suggests that shooting for which the jury convicted Appellant was in any way related to, similar to, or influenced by the D.C. sniper shootings.  We cannot conceive how this testimony would be helpful to the jury in determining an appropriate sentence for Appellant’s role in Baker’s murder.  Indeed, the circumstances lead us to conclude that the prosecutor interjected the D.C. shootings in an attempt to lead the jury to impose an 
in
appropriate sentence for Appellant based on a wholly unrelated case.  We hold that the trial court abused its discretion by allowing the prosecutor to question Appellant’s cousin about the D.C. shootings over Appellant’s relevancy objection.

Harm analysis

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2.
  
Generally, the erroneous admission or exclusion of evidence is non-constitutional error governed by rule 44.2(b) if the trial court’s ruling merely offends the rules of evidence.  
See Solomon v. State
, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).  Under Rule 44.2(b)
, we are to disregard the error unless it affected appellant’s substantial rights.  
Id.
  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall v. State
, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref’d)
.  In making this determination, we review the record as a whole. 
 See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)
.  If we have “a grave doubt” that the result was free from the substantial influence of the error, then we must reverse.  
Burnett v. State
, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002).  “Grave doubt” means that “in the judge’s mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.”  
Id.
 at 637-38.

In this case, the total disconnect between the murder of Eric Baker and D.C. sniper shootings tends to attenuate any possibility of harm arising from the trial court’s erroneous admission of testimony regarding the latter crime.  The testimony at issue was so utterly irrelevant to the question before the jury that it is difficult to see how it could influence the jury’s verdict.  The lack of detail about the D.C. sniper shootings, the absence of any evidentiary or logical link between those shootings and the murder of Eric Baker, and the fact that the prosecutor did not emphasize or even mention the D.C. shootings in argument weigh against a finding of harm.

The record as a whole tends to support the punishment assessed by the jury.  While Appellant’s witnesses at the punishment phase testified that he had no felony convictions, was a hard worker, and did not use drugs or alcohol, they also testified that the victim was a stranger to him.  The evidence adduced at the guilt/innocence phase supports the conclusion that Baker was the victim of a random but cold-blooded and deliberate act of extreme, unpredictable, and senseless violence.

Having reviewed the record as a whole, we do not find ourselves in “grave doubt” that the erroneously admitted testimony had a substantial influence on the jury’s verdict of life imprisonment.  
See
 
id. 
at 637-38.  We therefore hold that the error in admitting the testimony was harmless.  We overrule Appellant’s second issue.

Conclusion

Having overruled both of Appellant’s issues, we affirm the judgment of the trial court.  
See
 
Tex. R. App. P.
 43.2(a).

ANNE GARDNER

JUSTICE

PANEL F: CAYCE, C.J.; GARDNER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: November 10, 2005

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The record suggests that the grand jury also indicted Appellant’s brother for murder.