COURT OF APPEALS












COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL PASO, TEXAS

 

PAUL D. SMITH,                                                 )

                                                                              )              
No.  08-05-00018-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
282nd District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# F-0448191-JS)

                                                                              )

 

 

O
P I N I O N

 

Paul D. Smith
appeals his conviction for murder.  In a
single issue, he argues that the trial court committed reversible error by
admitting testimony regarding the extraneous offense of drug use--smoking crack
cocaine.  We affirm.








On January 12,
2004, Appellant was at an apartment complex visiting his cousins, Charles Lark
and Mack Hall.  They drank beer, used
crack cocaine, and watched pornographic and horror movies.  About 9:30 p.m., Debra Tumlinson, who lived
below the victim=s
apartment, heard a loud Athumping
or throwing around@ noise
coming from somewhere in the apartment complex. 
Then she heard a woman scream, A[h]e=s trying to kill me; he=s trying to kill me.@ 
She called 911 and then went outside to see what was happening.  There were other neighbors also outside.  Ms. Tumlinson testified that Appellant was
standing on the second floor balcony and he asked her if she had heard the
noises.  He then went inside his cousin=s apartment.

Taydren Moore
lived across the hall from the victim on the second floor of the apartment
complex.  That night, Mr. Moore was
watching wrestling on the television with his girlfriend and his brother.  While watching wrestling, he heard someone
scream Ahelp me,
he=s trying to kill me.@ 
Shortly after the first scream, he heard another scream.  When he heard his neighbors talking, he went
outside.  Mr. Moore stated that after
talking to his neighbors, he returned to his apartment to tell his brother to
stay inside until the police arrived.  As
he was leaving his apartment to return downstairs, he witnessed Appellant
leaving the victim=s
apartment.  Appellant asked if Mr. Moore
had Aheard it,
too?@  When police officers arrived on the scene and
located the victim, Mr. Moore informed an officer that he had seen Appellant
leaving from her apartment.

Orlando Hernandez
was also a resident of the apartment complex and lived on the third floor.  Mr. Hernandez was watching a basketball game
in his apartment when he heard people downstairs saying that someone was asking
for help.  He went outside and his
neighbors asked him if he had heard anything. 
Mr. Hernandez stated that he had not heard anything and returned to his
apartment.  Sometime thereafter, he went back
outside and down the stairs.  As he was
going down the stairs, he also saw Appellant leaving the victim=s apartment.








Officer Shannon
Murray and his partner Barry Maxwell, both of the Dallas Police Department,
were dispatched to the apartment complex on the night of January 12, 2004.  Officer Murray stated that upon arriving at
the apartment complex, he noticed Appellant between the second and third floor
of the building and the Asecond
[Appellant] saw our squad car, just [like] a >deer
in the headlight= look and
turned around and ran to the third floor.@  After talking to witnesses, Officer Murray
and his partner proceeded to the third floor as Appellant was exiting his
cousin=s
apartment.  Officer Murray stated that he
noticed that Appellant was sweating profusely, Alike
I=ve never seen before, ever@ and that was unusual because it was
the middle of January.

Officer Murray and
his partner were given permission to enter Mr. Lark=s
apartment to make sure no one inside was injured.  Officer Murray testified that he saw a woman=s Apurse
or a wallet@ spread
open on the couch inside the living room. 
Officer Murray stated that Mr. Lark claimed that the purse/wallet
belonged to his cousin.  After
determining that the scream had not come from the apartment of Mr. Lark,
Officer Murray and his partner began knocking on other doors.  After checking all of the apartments on the
third floor, Officer Murray and his partner proceeded to the second floor.  Someone from the apartment complex, although
Officer Murray could not remember who, directed him to the apartment of Spiwe
Mtemaringa.

Officer Murray and
Officer Maxwell knocked on Ms. Mtemaringa=s
door but received no answer.  Officer
Murray then tried the door and found it unlocked.  Upon entering the apartment of Ms. Mtemaringa,
Officer Maxwell located an individual on the floor who appeared to be
injured.  Officer Maxwell then called for
backup and an ambulance.








After clearing Ms.
Mtemaringa=s
apartment, both officers proceeded to the third floor and handcuffed Appellant
and Mr. Lark.  Officer Murray testified
that as he was leading Appellant down the stairs to the squad car, Appellant
saw Ms. Tumlinson and told her A>[o]h, that white bitch, she=s never liked me,=@
and A>[i]t=s
all right, I=ll be
back.  This ain=t
my first fucking rodeo.=@ 
The officers returned to Ms. Mtemaringa=s
apartment to check for vital signs and determined that she had no pulse.  Ms. Mtemaringa had been stabbed thirteen
times and bore defensive wounds to both her hands and arms.

During the
guilt/innocence phase of the trial, Appellant objected to any testimony by
either Mack Hall or Charles Lark regarding his use of crack cocaine prior to
the commission of the offense.  At a
hearing held outside of the presence of the jury, Appellant=s trial counsel argued that the
probative value of the evidence of crack cocaine use by Appellant prior to the
commission of the crime was substantially outweighed by the danger of unfair
prejudice.  The State argued that the
evidence was offered to prove intent, motive, and opportunity.  The trial court overruled Appellant=s objection and both Mr. Hall and Mr.
Lark testified.  The jury ultimately
found Appellant guilty of the offense of murder.  Appellant was sentenced to confinement for
life in the Institutional Division of the Texas Department of Criminal Justice
and assessed a fine of $10,000.

Standard
of Review

We review a trial
court=s
decision to admit or exclude evidence pursuant to Rule 403 under an abuse of
discretion standard.  Robbins v. State,
88 S.W.3d 256, 262 (Tex.Crim.App. 2002), citing Montgomery v. State, 810 S.W.2d 372,
391-93 (Tex.Crim.App. 1991)(Opin. on reh=g).  We give the trial court wide discretion and
latitude in its decision and will not reverse an evidentiary ruling as long as
it is within the zone of reasonable disagreement.  Robbins, 88 S.W.3d at 262.  A trial court=s
ruling on admissibility should not be disturbed simply because we might decide
a question differently than the trial judge. 
Montgomery,
810 S.W.2d at 391.  








In his sole issue,
Appellant claims the trial court committed reversible error by admitting  testimony, over the objection of Appellant=s trial counsel, of extraneous offenses
or bad acts during the guilt/innocence phase of the trial.  Specifically, Appellant complains of evidence
introduced through two witnesses regarding crack cocaine use prior to the
commission of the charged offense.[1]

As a preliminary
matter, the State argues that Appellant=s
trial counsel was required to object under both Rule 403 and Rule 404(b) in
order to properly preserve this issue for our review.  We disagree. 
While we agree that by making only a Rule 403 objection, Appellant has
waived his relevance complaint, we do not agree that he has also waived his
Rule 403 complaint.  See Santellan v.
State, 939 S.W.2d 155, 171 (Tex.Crim.App. 1997)(by making only Rule 403
objection, appellant waived relevance complaint).

Additionally, the
State argues that Appellant has failed to preserve error because he did not
object each and every time evidence of his use of crack cocaine was
proffered.  We disagree.  We do recognize that in most instances,
failure to object to proffered evidence each time it is offered effectively
waives that complaint on appeal.  Ethington
v. State, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991).  However, in this case Appellant first
objected to the evidence outside of the presence of the jury.  When a defendant challenges the admissibility
of evidence outside the presence of the jury and the trial court overrules a
defendant=s
objection, he need not renew that objection when the same evidence is later
presented before the jury.  Geuder v.
State, 115 S.W.3d 11, 13 (Tex.Crim.App. 2003); Ethington, 819 S.W.2d
at 858; see also Welch v. State, 993 S.W.2d 690, 694 (Tex.App.‑-San
Antonio 1999, no pet.).








The Texas rules of evidence
prohibit the use of extraneous offense evidence to prove character
conformity.  See Tex.R.Evid. 404(b).  However, such evidence may be admissible if
it has relevance apart from character conformity.  Tex.R.Evid.
404(b); Montgomery, 810 S.W.2d at 387. 
Evidence which logically serves such purposes as Aproof
of motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident@
is relevant beyond proving character conformity.  See Montgomery,
810 S.W.2d at 387; Tex.R.Evid.
404(b).

Although Appellant
has waived any relevance complaint under Rule 404(b), evidence of drug use
prior to the commission of a crime may be relevant under Rule 404(b) as tending
to show a motive for the commission of the offense.  Ladd v. State, 3 S.W.3d 547, 568
(Tex.Crim.App. 1999)(no abuse of discretion in determination that extraneous
offense evidence of defendant smoking cocaine prior to murder admissible to
prove motive); Etheridge v. State, 903 S.W.2d 1, 10 (Tex.Crim.App.
1994)(extraneous offense of drug use admissible to show motive for murder: to
obtain money to buy drugs); Massey v. State, 826 S.W.2d 655, 657-58
(Tex.App.‑-Waco 1992, no pet.)(evidence that defendant was smoking crack
cocaine prior to robbery admissible to show motive).








Even though
evidence is relevant, it may still be excluded when its probative value is
substantially outweighed by its unfair prejudicial effect.  See Tex.R.
Evid. 403; Montgomery, 810 S.W.2d at 387.  If a proper objection is made based on Rule
403, the trial court is required to conduct a balancing test.  Rojas v. State, 986 S.W.2d 241, 250
(Tex.Crim.App. 1998); Williams v. State, 958 S.W.2d 186, 195
(Tex.Crim.App. 1997)(holding trial court has no discretion as to whether to
conduct balancing test under Rule 403). 
Rule 403 favors the admission of relevant evidence and carries a
presumption that relevant evidence will be more probative than prejudicial.  See Allen v. State, 108 S.W.3d 281,
284 (Tex.Crim.App. 2003), cert. denied, 540 U.S. 1185, 124 S.Ct. 1405,
158 L.Ed.2d 90 (2004), citing Jones v. State, 944 S.W.2d 642, 652‑53
(Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139
L.Ed.2d 54 (1997).  Only unfair prejudice
provides a basis for exclusion of relevant evidence.  See Montgomery,
810 S.W.2d at 389.  Unfairly prejudicial
means evidence has Aan undue
tendency to suggest that a decision be made on an improper basis.@ 
Reese v. State, 33 S.W.3d 238, 240 (Tex.Crim.App. 2000), citing
Montgomery,
810 S.W.2d at 389.

A trial court=s ruling in conducting a balancing test
under Rule 403 must be measured against the relevant criteria of a Rule 403
inquiry.  Montgomery, 810 S.W.2d at 393.  The relevant criteria include:  (1) the inherent probativeness of the
evidence, that is, how compellingly the extraneous offense evidence serves to
make a fact of consequence more or less probable‑‑a factor which is
related to the strength of the evidence presented by the proponent to show the
defendant in fact committed the extraneous offense; (2) the potential the other
evidence has to impress the jury Ain
some irrational but nevertheless indelible way;@
(3) the time the proponent will need to develop the evidence, during which the
jury will be distracted from consideration of the indicted offense; and (4) the
force of the proponent=s
need for this evidence to prove a fact of consequence, i.e., does the proponent
have other probative evidence available to him to help establish this fact, and
is this fact related to an issue in dispute. 
See Montgomery,
810 S.W.2d at 389‑90.








First, the Afact of consequence@ in this case was the murder of Ms.
Mtemaringa.  Evidence of Appellant=s drug use serves to make that Afact of consequence@ more probable by providing a possible
motive for its commission.  Further, the
State presented strong evidence that Appellant did in fact use crack cocaine
prior to committing the offense.  Both
Mr. Hall and Mr. Lark, each related to Appellant, witnessed him smoking
crack cocaine.  Also, Mr. Lark testified
that when Appellant returned to his apartment, he gave him twenty dollars with
which to purchase additional crack cocaine. 
This testimony is particularly probative of Appellant=s motive.  Therefore, the first factor weighs in favor
of the State.

Second, the
testimony concerning Appellant=s
use of crack cocaine prior to the commission of the charged offense had little
potential to impress the jury in an irrational and indelible way.  The details concerning Appellant=s drug use were relatively
innocuous.  In light of the charged
offense and the other evidence presented, evidence of Appellant=s drug use would have little potential
to move the jury to convict Appellant on an improper basis.  Thus, this factor also weighs in favor of
admitting the extraneous act into evidence.

Third, the State
spent very little time developing the evidence such that the jury=s attention would be diverted from the
charged offense.  Specifically, only two
witnesses testified as to Appellant=s
drug use.  The first witness was Mr.
Charles Lark, Appellant=s
first cousin.  The State first asked Mr.
Lark Awhat did
y=all do when you got back to your
apartment?@  To which Mr. Lark responded, A[s]at and drank and smoked a little
crack . . . .@  The State then asked Mr. Lark
approximately five more questions concerning Appellant=s
drug use.  Cumulatively, the testimony by
Mr. Lark concerning Appellant=s
drug use constituted approximately two pages in a record of over six hundred
pages.  In addition to Mr. Lark=s testimony, the State asked Mack Hall,
who was also in the apartment until he left to purchase more beer, about
Appellant=s drug
use.  Mr. Hall stated that on the night
in question, he witnessed Appellant smoking crack cocaine.  Consequently, this factor also weighs in
favor of the State.








Finally, we review
the States need for the evidence.  In
this case, the State presented substantial physical evidence from which a jury
could determine Appellant was the individual who committed the charged
offense.  Appellant was positively
identified by two eyewitnesses leaving Ms. Mtemaringa=s
apartment at some point after residents heard her scream.  A butcher knife manufactured by the same
company as the knife missing from a butcher block located in Ms. Mtemaringa=s apartment was found in Mr. Lark=s kitchen drawer.  Genetic samples taken from this knife were
tested.  The test results confirmed that
the sample contained DNA from both Appellant and Ms. Mtemaringa.  A broken knife was also found in Mr. Lark=s garbage can.  On the knife were traces of blood containing
Appellant=s DNA.

Additionally, a
blood-stained shirt and blood-stained shoes belonging to Appellant were removed
from Mr. Lark=s
apartment.  Ms. Mtemaringa=s DNA was present on both the shirt and
the shoes.  A witness for the State
testified that after comparing shoe prints left at the scene with the soles of
Appellant=s shoes,
he could conclude that the prints were made by a shoe from the same
manufacturer, but could not positively identify Appellant=s shoes as the ones leaving the
print.  Although Appellant=s drug use may have been probative of
motive, the State had little need for this evidence in light of the substantial
evidence pointing to Appellant=s
guilt.  Accordingly, this factor weighs
in favor of Appellant.

However, after
considering all of the factors, we conclude the trial court=s decision that the probative value of
the extraneous offense evidence was not substantially outweighed by the danger
of unfair prejudice did not fall outside the zone of reasonable
disagreement.  Although the admission of
an extraneous offense often has a prejudicial effect, the evidence in this case
did not result in any unfair prejudice to Appellant.  Therefore, we find that the trial court did
not abuse its discretion in allowing the jury to hear the testimony concerning
Appellant=s drug
use. 








Even if we were to
find that the trial court abused its discretion in admitting evidence of
Appellant=s drug
use, we fail to see how the evidence would undermine the verdict in this
case.  Ordinarily, error in the admission
or exclusion of evidence is not constitutional. 
Arzaga v. State, 86 S.W.3d 767, 776 (Tex.App.-‑El Paso
2002, no pet.).  We generally disregard 

non-constitutional error unless a Asubstantial right@ of the appellant is affected.  Tex.R.App.P. 44.2(b);
Burnett v. State, 88 S.W.3d 633, 637 (Tex.Crim.App. 2002).

A substantial
right of the appellant is affected when the error has a substantial and
injurious effect upon the jury=s
verdict.  See Morales v. State, 32
S.W.3d 862, 867 (Tex.Crim.App. 2000); King v. State, 953 S.W.2d 266, 271
(Tex.Crim.App. 1997).  We should not
reverse a criminal conviction because of non-constitutional error if we have
fair assurance that the error did not influence the jury, or had but a slight
effect.  See Morales, 32 S.W.3d at
867.  In other words, absent Agrave doubt@
that the result was substantially influenced by the complained-of error, we
should treat the error as harmless.  See
Burnett, 88 S.W.3d at 637.

In making this
determination, we consider the entire record, including the jury instructions,
the parties= theories
of the case, and even closing arguments. 
Arzaga, 86 S.W.3d at 776. 
Important factors a court should consider in conducting a harm analysis
include:  (1) the character of the
alleged error and how it might be considered in connection with other evidence;
(2) the nature of the evidence supporting the verdict; (3) the existence and
degree of additional evidence indicating guilt; and (4) whether the State
emphasized the complained-of error.  See
Motilla v. State, 78 S.W.3d 352, 356-58 (Tex.Crim.App. 2002).  We note that overwhelming or substantial
evidence of a defendant=s
guilt plays a significant role in our analysis. 
See id. at 359; see also McClenton v. State, 167 S.W.3d
86, 93 (Tex.App.‑-Waco 2005, no pet.).








In the instant
case, the testimony by Charles Lark and Mack Hall concerning Appellant=s drug use was relatively brief and
unrelated to a determination of guilt, other than providing a possible motive
for the commission of the offense.  The
testimony concerning drug use by Appellant consisted of little more than
Appellant had been smoking crack cocaine prior to the murder and the amount
used.  There was additional testimony by
Mr. Lark that at some point after the murder occurred, Appellant returned to
his apartment with twenty dollars allegedly seeking to purchase additional
crack cocaine.  The testimony was neither
inflammatory or emotionally charged, misleading or confusing such that a jury
would be moved from a Astate
of nonpersuasion to one of persuasion as to the issue in question.@ 
Wesbrook v. State, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000).

There was
substantial evidence introduced from which a rational jury could have concluded
that Appellant was responsible for the death of Ms. Mtemaringa.  Appellant was identified by two separate
eyewitnesses leaving Ms. Mtemaringa=s
apartment shortly after neighbors heard a woman scream.  Ms. Mtemaringa=s
DNA was found on items removed from Mr. Lark=s
apartment and Appellant was seen returning to Mr. Lark=s
apartment after leaving Ms. Mtemaringa=s
apartment.  Specifically, Ms. Mtemaringa=s DNA was found on a shirt and shoes
belonging to Appellant.








The State elicited
the complained-of testimony from two witnesses in approximately six separate
questions during the guilt/innocence phase of the trial, each briefly
addressing Appellant=s
use of crack cocaine during the period proceeding the commission of the
offense.  The State did not place any
undue emphasis on the testimony either when elicited or during closing.  During closing arguments, the State mentioned
drug use only once when it asked rhetorically if Appellant may have gone Adown to rob her to get more money for
drugs?@  Finally, the trial court instructed the jury
not to consider the extraneous offense evidence for any purpose other than
determining motive, intent, or opportunity in connection with the offense
charged in the indictment.

Considering the
complained-of evidence in light of the record as a whole, we conclude that the
testimony of the two witnesses concerning Appellant=s
drug use had little effect, if any, on the jury=s
decision to convict Appellant of murder. 
Put another way, we have more than a Afair
assurance that the error did not influence the jury or had just a slight effect@ and that Appellant would have been
convicted of the charged offense had the evidence of his drug use not been
introduced.  See Motilla, 78
S.W.3d at 360.  Because Appellant=s substantial rights were not affected,
we conclude that any error in admitting evidence of Appellant=s drug use was harmless and must be
disregarded.  Appellant=s sole issue is overruled.

Having overruled
Appellant=s sole
issue, the judgment of the trial court is affirmed.

 

 

 

June
22, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Appellant also states that the trial court erred by admitting the evidence of
crack cocaine use because Asuch
evidence was not included in the state=s
notice of Extraneous Offenses.@  Appellant did not brief this issue.  Even if Appellant had fully briefed this
issue, he did not bring this complaint to the attention of the trial court by a
timely request, objection, or motion when the State sought to introduce the
evidence at trial.  See Tex.R.App.P. 33.1(a)(1).