Devin Lynne BURNETT, Appellant,

v.

The STATE of Texas.

No. 860–01.

Court of Criminal Appeals of Texas.

Oct. 30, 2002.

Robert N. Udashen, Dallas, for Appellant.

Pamela Moore Lakatos, Asst. DA, Denton, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, and HOLCOMB, JJ., joined.

We granted the State's Petition for Discretionary Review to determine whether the court of appeals properly reversed appellant's conviction because the trial judge failed to admonish appellant regarding the punishment range for his offense, as required by Code of Criminal Procedure article 26.13,[1] before accepting appellant's

---

1. All future references to articles in this opinion are to the Texas Code of Criminal Proce-

guilty plea.[2] *Burnett v. State*, No. 02–00–00171–CR, slip op. 4 (Tex.App.-Fort Worth Mar. 15, 2001)(not designated for publication). The failure to admonish appellant regarding the range of punishment was clearly error. There is, however, nothing in the record that supports an inference that: 1) appellant was unaware of the consequences of his plea; or 2) the trial judge's failure to admonish him misled appellant into pleading guilty because he did not know the applicable range of punishment. To the contrary, this record is replete with statements concerning the applicable range of punishment. Thus, the error in this case was harmless. Accordingly, we reverse the court of appeals' judgment and remand for consideration of appellant's remaining points of error. ·

## I.

A Denton County grand jury indicted appellant, Devin Lynn Burnett, for delivery of a controlled substance, specifically, more than one gram but less than four grams of cocaine. In an enhancement paragraph, the State alleged a prior felony conviction for Burglary of a Habitation.[3] The record includes the following exchange from appellant's arraignment:

THE COURT: If you will arraign the Defendant, State....

([THE STATE] read aloud the indictment.)

THE COURT: And, Mr. Burnett, have you received a copy of that indictment?

THE DEFENDANT: Yes, sir.

THE COURT: And is your .name spelled correctly therein?

THE DEFENDANT: Yes, sir.

THE COURT: And what is your plea to that first paragraph of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Guilty? All right. And [State] you may proceed with the enhancement.

([THE STATE] read aloud the enhancement paragraph.)

THE COURT: And what is your plea to that second paragraph in the indictment, true or not true?

THE DEFENDANT: True.

THE COURT: All right. And, Mr. Burnett, you understand that we have a jury in the hallway that we will call in to do punishment? They will hear all the evidence and assess your punishment in this case. You—if you want, you can have that jury do the guilt/innocence phase and decide if that paragraph is true or not. You can plead not guilty and not true if you wish, irrespective of what the facts are in the case, and require the State to prove it.

During that process, you would have [defense counsel] there with you who could confront and cross-examine witnesses brought against you. You could call any witnesses that you wanted to call. You could testify or you could not say anything and remain silent and require the State to prove it. And by pleading guilty here, you are giving up all of those rights during the guilt/innocence phase.

You understand that?

THE DEFENDANT: Yes, sir.

dure, unless otherwise noted.

2. We granted review on the following issue: Did the Court of Appeals err in reversing and remanding this cause for new trial since nothing in the record shows that ap-

pellant was not aware of the consequences of the plea?

3. At the punishment phase, the State also introduced evidence of appellant's fourteen other prior convictions.

THE COURT: And has anybody promised you anything or coerced you in any way to plead guilty and true in this case?

THE DEFENDANT: No, sir.

THE COURT: And you are doing that because that is what you think is best for you?

THE DEFENDANT: Yes, sir.

THE COURT: And you are pleading guilty to the first paragraph because, in fact, you are guilty?

THE DEFENDANT: Yes, sir.

THE COURT: You are pleading true to the second paragraph because, in fact, it is true?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Do you have any questions?

THE DEFENDANT: No, sir, not at this time.

THE COURT: Am I right when I say that you want the jury to come in and assess punishment—

THE DEFENDANT: Yes, sir.

THE COURT:—in this case? All right. You understand your other options—I don't know if there has been any plea bargain agreements in this case or any offers or anything of that nature. But, you know, you can always try to talk a plea bargain, send your lawyer to the State's attorneys and try to work out a plea bargain? I don't know if there has been any or not, and you may have gotten one and rejected it and didn't like it. And that's fine. You can have—you can ask me to set punishment—hear the evidence and set punishment. You can have a jury set punishment.

Am I right when I say that you want a jury to set that punishment?

THE DEFENDANT: Yes, sir.

THE COURT: All right. That is what we will do.

[DEFENSE COUNSEL]: Could I ask him a couple of questions, Judge?

THE COURT: Yes. Certainly.

[DEFENSE COUNSEL]: Mr. Burnett, the State has made a plea offer in this case; is that right?

THE DEFENDANT: Yes, sir.

[DEFENSE COUNSEL]: And they have offered you 12 years; is that true?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: And you have chose to—to—well, you have decided to not accept that plea offer; is that true?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: You understand that plea offer is still on the table at this time before we start this voir dire?

THE DEFENDANT: Yes, sir.

[DEFENSE COUNSEL]: Okay. Pass the witness.

[THE STATE]: I don't have anything.

THE COURT: Anything else from either side?

[DEFENSE COUNSEL]: No, sir. . . .

After empaneling the jurors who would assess appellant's punishment, the trial judge accepted appellant's plea of "guilty" to the charged offense and "true" to the enhancement paragraph. The jury then heard the evidence and deliberated a little less than four hours before returning its verdict: 85 years' confinement in TDCJ—Institutional Division and a $10,000 fine.

Appellant challenged his conviction, alleging, *inter alia*, that the trial judge erred when he failed to admonish appellant according to article 26.13(a)(1). After determining that the trial judge had indeed erred by failing to admonish appellant regarding the punishment range for his offense in accordance with article 26.13(a)(1),

the court of appeals applied Texas Rule of Appellate Procedure 44.2(b) to determine whether the error affected appellant's substantial rights. Stating that "[n]othing in the record clearly indicates that appellant was aware of the consequences of his guilty plea ... It is our opinion that appellant's willingness to accept the 12 year plea offer could have been affected had he known the maximum range of punishment." The court of appeals therefore reversed appellant's conviction and remanded the case for a new trial.

## II.

 The arraignment colloquy quoted above suggests that the trial judge made a good faith attempt to discern whether appellant understood the consequences of his plea. The fact remains, however, that the trial judge did not comply, even "substantially,"[4] with article 26.13(a)(1), in that he wholly failed to admonish appellant regarding the applicable range of punishment. As this Court recognized in *Cain v. State*, "To claim that an admonishment was in substantial compliance even though it was never given is a legal fiction."[5] Therefore, we agree with the court of appeals that the trial judge clearly erred when he failed to admonish the defendant regarding the range of punishment. We

disagree, however, with the court of appeals' analysis and conclusion on the harm issue.

 Failure to admonish a defendant on the direct consequences of his guilty plea is statutory rather than constitutional error.[6] Undoubtedly, a critical direct consequence of a guilty plea is the maximum punishment that can be assessed for the offense to which the defendant proposes to plead guilty.[7]

 Courts of appeals must conduct the harm analysis of statutory errors, as a species of "other errors," under Rule 44.2(b), disregarding the error unless it "affect[ed] [appellant's] substantial rights."[8] For claims of non-constitutional error, we, like the Supreme Court, hold that "a conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the proceeding."[9] Put another way, if the reviewing court has "a grave doubt" that the result was free from the substantial influence of the error, then it must treat the error as if it did.[10] "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the

4. *See* Tex.Code Crim. Proc. Ann. art. 26.13(c).

5. 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

6. *See Aguirre–Mata v. Texas*, 992 S.W.2d 495, 499 (Tex.Crim.App.1999); *see also Schutz v. State*, 63 S.W.3d 442, 443, n. 1 (Tex.Crim. App.2001); *Carranza v. State*, 980 S.W.2d 653, 657–58 (Tex.Crim.App.1998); *High v. State*, 964 S.W.2d 637, 638 (Tex.Crim.App. 1998) (per curiam); *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

7. *See Eubanks v. State*, 599 S.W.2d 815, 816 (Tex.Crim.App.1980); *Wright v. State*, 499 S.W.2d 326, 327 (Tex.Crim.App.1973).

8. Tex.R.App. Proc. 44.2(b). *See Carranza v. State*, 980 S.W.2d at 658; *High v. State*, 964 S.W.2d at 638. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

9. Bank of Nova Scotia v. United States, 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

10. *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).

harmlessness of the error."[11] Thus, "in cases of grave doubt as to harmlessness the petitioner must win."[12]

■ Neither the appellant nor the State have any formal burden to show harm or harmlessness under Rule 44.2(b).[13]

"[N]either the State nor appellant must demonstrate harm when [a non-constitutional] error has occurred. Rather, it is the appellate court's duty to assess harm after a proper review of the record. Accordingly, a conviction must be reversed on direct appeal if the record shows that a defendant was unaware of the consequences of his plea and that he was misled or harmed by the trial court's failure to admonish him regarding the range of punishment."[14]

■ Thus, a reviewing court must independently examine the record for indications that a defendant was or was not aware of the consequences of his plea and whether he was misled or harmed by the trial court's failure to admonish him of the punishment range.[15] The court of appeals cited and nominally relied upon *Anderson v. State*[16] for the proper harm analysis to conduct. In fact, the court of appeals inverted the first part of the required analysis, stating essentially that the record must clearly show that appellant knew the consequences of his plea. The correct test is just the opposite—to warrant a reversal on direct appeal, the record must support an inference that appellant *did not know* the consequences of his plea.[17] Reviewing courts must examine the entire record to determine whether, on its face, anything in that record suggests that a defendant did not know the consequences of his plea— here, the range of punishment.[18] Of course, a silent record would support such an inference. The reviewing court also may simultaneously consider record facts from which one would reasonably infer that a defendant did know the consequences of his plea or, in this case, was actually aware of the range of punish-

---

**11.** *O'Neal v. McAninch*, 513 U.S. 432, 433–36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

**12.** *Id.* at 436.

**13.** *See Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim.App.2001) (noting that "the parties may assist by suggesting how the appellant was harmed (or not), but it is the responsibility of the reviewing court to decide whether it is likely that the error had some adverse effect on the proceedings"). *See generally O'Neal v. McAninch*, 513 U.S. at 433–36, 115 S.Ct.992.

**14.** *Carranza*, 980 S.W.2d at 658. "Harm" in this context means that appellant probably would not have pleaded guilty but for the failure to admonish. *See United States v. Cuevas–Andrade*, 232 F.3d 440, 443–44 (5th Cir. 2000), *cert. denied* 532 U.S. 1014, 121 S.Ct. 1748, 149 L.Ed.2d 670 (2001). "[A] defendant's substantial rights are affected if the district court's Rule 11 errors 'may reasonably be viewed as ... a material factor affecting [the defendant's] decision to plead guilty.' " *Id.; see also United States v. John-*

son, 1 F.3d 296, 302 (5th Cir.1993) (en banc) (a defendant's substantial rights are affected if his "knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty"). We have adopted the federal definition of harm under Rule 11(h), the equivalent federal rule for conducting a harm analysis when the trial court fails to admonish a guilty-pleading defendant. *See Aguirre–Mata v. State*, 992 S.W.2d 495, 498 (Tex.Crim.App. 1999) (applying statutory harmless error analysis to failure to admonish).

**15.** *Carranza*, 980 S.W.2d at 658.

**16.** 985 S.W.2d 195, 198 (Tex.App.-Fort Worth 1998, pet. ref'd).

**17.** *Carranza*, 980 S.W.2d at 657–58; *see also Johnson*, 43 S.W.3d at 4–5; *Schutz v. State*, 63 S.W.3d 442, 444–45 (Tex.Crim.App.2001); *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex.Crim. App.2000).

**18.** *See Carranza*, 980 S.W.2d at 657–58.

ment.[19] It is ultimately the responsibility of the reviewing court to determine whether the record supports or negates the defendant's assertion of harm.[20] If, after a conscientious examination of the record, the reviewing court is left with "grave doubt" on the matter, the error is not harmless.[21]

### III.

■ The critical inquiry in the present case is whether the *trial judge's* failure to admonish appellant about the maximum possible penalty—life imprisonment—materially affected his decision to plead "guilty" to the charge and "true" to the enhancement paragraph. If appellant did not actually know [22] that, at the maximum, the jury could assess his punishment at life in prison, then clearly, the trial judge's failure to explicitly admonish appellant about the range of punishment is almost certainly material. The record before us lacks even a scintilla of evidence that appellant *did not* know the punishment range, while the record is replete with evidence that he *did* know the punishment range.

For example, appellant did not enter his guilty plea until after the voir dire to select the jury that would assess his punishment. The voir dire was held in open court and in appellant's presence. The punishment range for appellant's offense and prospective jurors' capacity to assess the maximum penalty was the primary focus of the proceeding. After inquiring about their attitudes towards legalization

or decriminalization of particular drugs, the prosecutor asked if anyone present knew the defendant. One juror responded that he was acquainted with appellant. The prosecutor then read the indictment aloud for the venire panel, explaining the effect of the enhancement paragraph on the range of punishment:

> ... We have also alleged that the Defendant here has previously been convicted of burglary of a habitation, okay? So that takes the punishment range from what would normally be two to twenty, a second degree felony, and makes it a first degree felony, which is five up to 99 years or life and, in addition, a fine of up to $10,000, okay?

After explaining that jurors would have to be able to consider the full range of punishment, capable of assessing five years at a minimum or life in prison and a $10,000 fine at a maximum after hearing the evidence, the prosecutor told the venire panel:

> ... And I will be up front with you. We are going to ask you for a life sentence, okay?
>
> So is there anybody here who can't assess a life sentence for delivery of cocaine of one gram or more but less than four grams having been previously convicted of burglary?
>
> Anybody can't do that?

The prosecutor explicitly mentioned "life sentence" as the maximum punishment

---

**19.** *Schutz,* 63 S.W.3d at 444–45.

**20.** *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim. App.2001).

**21.** *O'Neal v. McAninch,* 513 U.S. at 434, 115 S.Ct. 992 (stating that "[b]y 'grave doubt' we mean that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error").

**22.** It is important to distinguish appellant's factual *knowledge* (or lack thereof)—that the applicable range of punishment for his enhanced offense was 5 years-to-life—from his *ability to judge* the risk that he would actually receive a sentence at the high end of the punishment range. It is the former, appellant's factual knowledge of the punishment range, with which we are concerned.

range for the offense a total of twelve times during voir dire and twice expressly stated that the State would seek life in prison for appellant. During the State's examination, there were four instances in which individual jurors repeated the phrase, "life sentence," as they answered questions about their ability to assess the maximum punishment.

Similarly, appellant's own counsel discussed the range of punishment with the venire panel. He opened his remarks:

> ... [W]e know from what you have already heard that the law in this case is that the range of punishment is five to 99 years or life. And that is a huge range of punishment. And this is originally a second degree offense, which would have a punishment range of two to 20, and because of that enhancement paragraph that the State spoke of, that has changed the range and has actually changed it dramatically.
>
> When you are dealing with two to 10, which is a third degree felony, or two to twenty, which is a second, then you have got a more contained range of punishment. But when you have the first degree felony range, then that really opens it up and, I guess you could say, expands it to a—to a—to take a lot of things into consideration.

At the close of the general examination, the trial judge had the venire panel escorted into the hallway. Then, still in open court, in the presence of both attorneys and appellant, the trial judge had individual members of the venire panel brought into the courtroom for additional questioning. The trial judge himself mentioned the range of punishment and a potential life sentence approximately twenty-five times. The prosecutor mentioned the phrase, "life sentence" four more times.

■ In each instance, the record reflects that appellant was present, and yet the record does not show that appellant or his counsel objected or attempted to withdraw his plea at any point during voir dire, despite the repeated references to the potential severity of the sentence that the jury would assess. After the jury was sworn in, appellant formally entered his plea:

> ([The State] read aloud the [first paragraph of the] indictment.)
>
> THE COURT: And, Mr. Burnett, what is your plea to the first paragraph in the indictment?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: And [the State] may present the second paragraph.
>
> ([The State] read aloud the enhancement paragraph of the indictment.)
>
> THE COURT: And what is your plea to the second paragraph, true or not true?
>
> THE DEFENDANT: True.
>
> THE COURT: You may be seated. And the State may proceed with its opening statement.

Not surprisingly, the appropriate punishment for appellant's offense in light of his fifteen prior convictions was the focus of closing arguments. The prosecution argued vigorously for a life sentence, emphasizing appellant's numerous prior convictions and "urging the jury to send a message." Defense counsel, on the other hand, spoke of appellant's youth and (what he argued was) the relatively minor nature of the instant offense as reasons not to "throw away the key." The jury charge, which detailed the range of punishment, was read aloud in open court. Defense counsel did not object to the charge. There was no on-the-record reaction or protest from appellant when the charge was read, when the jury returned its verdict on punishment, or at appellant's sentencing. Nor did defense counsel attempt to develop a record to support a

motion for a new trial on the grounds that the plea was not knowing and voluntary.[23] The court of appeals emphasizes the fact that appellant, unlike the defendant in *Anderson,* did not testify and did not sign anything indicating that he was aware of the range of punishment. This is not the proper inquiry. The reviewing court must examine the entire record for evidence that appellant was or was not aware of the consequences of his plea. Moreover, while an express acknowledgment by appellant would be helpful, the lack of such evidence does not necessarily show that appellant was unaware of the consequences of his plea.

There is in fact nothing in the record to show that appellant was unaware of the range of punishment. Instead, the record is replete with instances in which the parties refer to the potential severity of the sentence that the jury could assess. Appellant's arraignment, voir dire, and the trial on punishment took less than two full days. During that period, the phrases "life sentence," "life in prison," and "five-to-99 or life" appear in the record approximately forty-five times. Without any evidence on the record to support an inference that appellant did not know the consequences of his plea and with a great deal of evidence to show that appellant did know the range of punishment he faced, we cannot find that the trial judge's failure to admonish appellant regarding the range of punishment misled or harmed appellant.[24] Therefore, we reverse the court of appeals' judgment and remand for consideration of appellant's remaining points of error.[25]

KEASLER, J., concurred.

---

**23.** Appellant's counsel did file a "plain vanilla" motion for new trial, presumably to gain an extension of time in which to file an appeal. This motion did not mention the voluntariness of appellant's plea or the trial court's failure to admonish him on the range of punishment.

**24.** Our conclusion in this case should not be interpreted as trivializing trial judges' duty to administer the admonitions that article 26.13 requires. As the Fifth Circuit reminded federal district court judges regarding Rule 11: [n]othing in this opinion should be construed as condoning even the slightest diminution in the degree of diligence that the district courts of this circuit are expected to devote to complying fully with both the letter and the spirit of Rule 11 in every instance.
*United States v. Johnson,* 1 F.3d 296, 298 (5th Cir.1993)(concluding that trial court's failure to admonish defendant concerning mandatory minimum imprisonment was harmless error).

**25.** One of those unresolved claims concerns whether the trial court's failure to admonish appellant of the range of punishment violated his federal due process rights.