IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1633-04






DANIEL D. GARCIA, Appellant



v.



THE STATE OF TEXAS
 




ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY





 Price, J., filed a dissenting opinion.



DISSENTING OPINION 



 I disagree that the court of appeals in this cause ignored a viable theory of
admissibility under Rule 404(b), or that its balancing analysis under Rule 403 was flawed. (1) 
Because I cannot find fault with the court of appeals's conclusion that the error in admitting
the so-called "car dumping" incident was harmful, I would affirm its judgment.

Rule 404(b)


 The court of appeals held that the "car dumping" incident was not admissible either
to prove motive or intent; nor was it admissible to rebut a defensive theory. (2) The majority
today does not take issue with any of these holdings, essentially acknowledging that the "car
dumping" incident logically served none of the non-character-conformity purposes adduced
by the State. (3) Nor does the majority accept the State's invitation to overrule our opinion in
Smith v. State. (4) Indeed, the majority reconfirms the core holding of Smith, viz: that to be
admissible under Article 38.36(a) of the Code of Criminal Procedure, (5) evidence must be
relevant to some non-character-conformity purpose. That is to say, it must tend to make the
existence of a fact of consequence to the determination of the action more probable or less
probable than it would be without that evidence, and it must do so employing a logical
inference other than character conformity. (6) In its opinion below, the court of appeals adhered
to Smith scrupulously. (7)

 Nevertheless, the majority faults the court of appeals insofar as it "failed to consider
that in this case, the relationship between the Appellant and the victim was itself a material
issue." (8) The only elaboration on this criticism comes a few sentences later, when the
majority observes: "The court of appeals failed to consider that the circumstances
surrounding the relationship at the time of the killing is relevant evidence under Article
38.36(a) and the car dumping incident is admissible under Rule 404(b) for the purpose of
illustrating the nature of their relationship." (9) But the majority does not explain how
"illustrating the nature of their relationship" in the context of this case advances the
evidentiary ball in any way that does not exclusively involve impermissible inferences of
character conformity.

 Given how faithfully the court of appeals adhered to our Smith opinion, it is not at all
surprising that it failed to come up with nature-of-the-relationship as an operative theory of
admissibility under Rule 404(b). Nor did the State make this argument in its appellate briefs. 
We were quite explicit in Smith that, before evidence of "the previous relationship existing
between the accused and the deceased" may be introduced, the proponent of that evidence
must be able to identify some non-character-conformity purpose. It is true that the purpose
does not have to be listed in Rule 404(b), since the rule itself is "illustrative," and not
exhaustive. (10) But the evidence must logically serve to make more probable or less probable
an elemental fact; make more probable or less probable an evidentiary fact leading
inferentially to an elemental fact; or make more probable or less probable defensive evidence
that undermines an elemental fact. (11) It goes without saying that the nature of the relationship
is not, in itself, an "elemental fact." The majority today does not tell us how nature of the
relationship may constitute an evidentiary fact that inferentially establishes or undermines
an elemental fact. Nor has the State suggested any way that it does.

 Later, albeit in the context of its discussion of Rule 403, the majority provides further
insight when it explains that "the evidence was probative of the relationship between
Appellant and [his wife], and was necessary to tie together the events beginning with their
first separation, including the subject matter of their counseling sessions, which ultimately
explained why [his wife] filed for divorce." (12) It is not self-evident how any of this makes
more or less probable any fact of consequence to the determination whether the appellant
murdered his wife, other than to show general animus or ill will toward her. But, once again
relying appropriately upon our opinion in Smith, the court of appeals responded to the State's
contention that the "car dumping" incident was admissible to show ill will and anger, thus:

 An extraneous offense that merely shows general ill will cannot alone be
sufficient. Otherwise, the court of criminal appeals would not have held that
evidence under article 38.36 must still pass rule 404(b) muster. See Smith, 5
S.W.3d at 679. Here, the "car dumping" incident shows general ill will on one
occasion. It simply is not probative of [the appellant's] motive to murder [his
wife] two years later. (13)


All that the majority has done today is to re-cast the State's "ill will" theory of admissibility,
which the court of appeals expressly rejected, as nature of the relationship evidence, and
declare that the court of appeals ignored it. But the court of appeals did not ignore it. It
simply found it too remote to be probative. I see no reason to disagree.

Rule 403


 But even assuming that the majority is correct today to claim that nature-of-the-relationship evidence is somehow a legitimate purpose, apart from "ill will," under Rule
404(b), it does not adequately refute the court of appeals's conclusion that evidence of the
"car dumping" incident was substantially more prejudicial than probative. The majority
declares that the court of appeals's analysis was "inevitably skewed" by its failure to
recognize the probative value of the evidence. (14) To the extent that the majority's nature of
the relationship theory of admissibility is really just a reformulation of the State's ill will
theory, it is not accurate to say the court of appeals failed to recognize it. In fact, the court
of appeals recognized it, and rightly rejected it.

 But again, even entertaining the assumption that the majority's nature of the
relationship theory has some legitimate, non-character-conformity purpose under Rule
404(b), the evidence was still substantially more prejudicial than probative. As the court of
appeals noted when it assumed (as I do, arguendo, and only for purposes of the Rule 403
analysis) that the "car dumping" incident had legitimacy as "motive" evidence, there was
plenty of other evidence to show the appellant's anger and ill will toward his wife. (15) The
State had no need to disclose the "car dumping" incident. That the appellant and his wife
were in marriage counseling, that the counseling was not helping, and that his wife had filed
for divorce, precipitating disputes about money and child custody, was all the evidence of
either ill will, motive, or nature of the relationship that the State could possibly need. Adding
the "car dumping" incident, even for its arguably explanatory value (if any), did not
appreciably contribute to the inference that the appellant wanted (or intended, or had motive,
or was angry at, and therefore resolved) to kill his wife. Aside from its character-conformity
value, the "car dumping" incident did not enhance the state's nature of the relationship
purpose under Rule 404(b). The State had no compelling need for it.

 The majority also invokes the trial court's limiting instructions as reason to believe
that "any potential prejudice was" insignificant. (16) But the trial court's instructions, both
during the course of trial and in its charge to the court at the guilt phase of trial, limited the
jury's consideration of extraneous misconduct only to the issues of intent and motive. The
court of appeals concluded that evidence of the "car dumping" incident did not legitimately
serve these purposes, and the majority does not contest that conclusion today. In fact, then,
the limiting instructions only exacerbated the prejudicial impact of the evidence, for it likely
led the jury to believe it could consider the evidence for impermissible character-conformity
purposes in the false guise of "intent" or "motive."

Rule 44.2(b) (17)


 The State argues in its brief on the merits on discretionary review that the court of
appeals "erred by failing to correctly apply" Rule 44.2(b). Reading on, however, it is
apparent that the State does not mean by this that the court of appeals somehow misconstrued
the language of the rule, or ignored this Court's precedents construing it. The State just
contends that the court of appeals reached the wrong result. Were this the only ground for
review in the case, in all probability we would never have granted it, since we do not
ordinarily exercise our power of discretionary review to correct the courts of appeals'
applications of well-settled or uncontroversial legal principles. See Arcila v. State, 834
S.W.2d 357 (Tex. Crim. App. 1992). (18)

 The State argues that the evidence aside from the "car dumping" incident was
"overwhelming," and thus, any error was harmless. But the court of appeals disagreed,
finding the evidence to be circumstantial, with exculpatory explanations offered for much
of the otherwise seemingly inculpatory circumstances. (19) References to the "car dumping"
incident were pervasive during the trial, and it was emphasized during the State's closing
argument. (20) Relying upon our opinion in Burnett v. State, (21) the court of appeals declared
itself in "equipoise" on the question whether the error affected the appellant's substantial
rights, and rightly concluded it must reverse under these circumstances. (22) I cannot find any
fault with this analysis, and thus, I would affirm the judgment of the court of appeals. 
Because the Court does not, I respectfully dissent.

Filed: June 28, 2006

Publish
1. Tex. R. Evid. 404(b), 403.
2. Garcia v. State, 150 S.W.3d 598, at 611-615 (Tex. App. - San Antonio 2004).
3. Slip op. at 15, 16. The court of appeals found that the "car dumping" incident was
essentially too remote in time from the offense to supply evidence of motive, and that the intent of
whoever murdered the victim was self-evident. See Garcia v. State, supra, at 612 & 613,
respectively. Nor did it serve logically to rebut a defensive issue. Id., at 14. The majority today
does not dispute any of these conclusions.
4. 5 S.W.3d 673 (Tex. Crim. App. 1999).
5. Tex. Code Crim. Proc. art. 38.36(a).
6. Smith v. State, supra, at 679 & n. 13.
7. Garcia v. State, supra, at 611, 613.
8. Slip op. at 15.
9. Id., at 15-16.
10. Montgomery v. State, 810 S.W.2d 372, at 387 (Tex. Crim. App. 1991) (Opinion on rehearing
on Court's own motion).
11. Id. See Smith v. State, supra, at 679, n. 13; Tex. R. Evid. 401.
12. Slip op. at 17.
13. 150 S.W.3d at 613.
14. Slip op. at 17.
15. 150 S.W.3d at 616-617.
16. Slip op. at 17.
17. Tex. R. App. Proc. 44.2(b).
18. Although we nominally overruled Arcila in Guzman v. State, 955 S.W.2d 85, at 90 (Tex.
Crim. App. 1997), we elsewhere in Guzman explained that "Arcila is better understood to state the
types of considerations that inform our decisions whether to exercise our discretion to review an
intermediate appellate court's decision." 955 S.W.2d at 89-90. See King v. State, 125 S.W.3d 517,
at 520 & n. 9 (Tex. Crim. App. 2003) (Cochran, J., concurring in refusal of PDR).
19. Garcia v. State, supra, at 616.
20. Id., at 615-16.
21. 88 S.W.3d 633, at 637 (Tex. Crim. App. 2002).
22. Garcia v. State, supra, at 615-16.