NUMBER 13-06-293-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


ELOY CARDENA AKA 

ABRAHAM CARDENAS, Appellant,


v.



THE STATE OF TEXAS , Appellee.

 



On appeal from the 319th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 Appellant, Abraham Cardenas, was charged with possession with intent to deliver
cocaine, a first degree felony, enhanced by two prior felony convictions. (1) Without a plea
agreement, appellant pleaded guilty to the charged offense, but "not true" to the
enhancement paragraphs. The trial court found appellant guilty, found the enhancement
allegations "true," and sentenced appellant to life in prison. (2) Appellant filed a motion to
reconsider and motion for new trial, which the trial court denied. In three related issues,
appellant contends: (1) the trial court failed to admonish him as to the applicable range of
punishment; (2) he did not knowingly and voluntarily plead guilty because he did not
understand the consequences of his actions; and (3) he was denied effective assistance
of counsel at the plea hearing. We affirm. 

Standard of Review and Applicable Law


 Before accepting a plea of guilty or no contest, article 26.13 of the Texas Code of
Criminal Procedure requires a trial court to admonish the defendant as to the range of
punishment, as well as to other consequences of his plea. (3) The admonishments may be
made either orally or in writing. (4) If the admonishments are made in writing, the defendant
and his attorney must sign a statement that the defendant understood the admonitions and
was aware of the consequences of the guilty plea. (5) Substantial compliance by the court
in making the admonishments is sufficient, unless the defendant affirmatively shows that
he was unaware of the consequences of his plea and that he was misled or harmed by the
court's admonishment. (6) In cases where the trial court fails to admonish, a reviewing court
must "independently examine the record for indications that a defendant was or was not
aware of the consequences of his plea and whether he was misled or harmed by the trial
court's failure to admonish him of the punishment range." (7) 

 If the record establishes that the trial court properly admonished the defendant
about the consequences of his plea, there is a prima facie showing that the guilty plea was
entered knowingly and voluntarily. (8) The burden then shifts to the defendant to show that
he pleaded guilty without understanding the consequences of his plea and, consequently,
suffered harm. (9) In determining the voluntariness of a plea, we consider the totality of the
circumstances, viewed in light of the entire record. (10) Once a defendant has pleaded guilty
and attested to the voluntary nature of his plea, he bears a heavy burden at a subsequent
hearing to demonstrate a lack of voluntariness. (11) A plea is not rendered involuntary simply
because a defendant received a greater punishment than he anticipated. (12)

 When a defendant challenges the voluntariness of a plea entered upon the advice
of counsel, contending that his counsel was ineffective, the voluntariness of the plea
depends on (1) whether counsel's advice was within the range of competence demanded
of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that,
but for counsel's errors, he would not have pleaded guilty and would have insisted on going
to trial. (13) As with other types of ineffective assistance of counsel claims, appellant has the
burden to show, by a preponderance of the evidence, that counsel's performance fell below
a reasonable standard of competence, and that appellant would, with a reasonable
probability, have pleaded not guilty and insisted on going to trial had he been properly
advised. (14) In evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case. (15) Any
allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. (16) There is a strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance. (17) 
Appellant bears the burden of proving by a preponderance of the evidence that counsel
was ineffective. (18) 

 Waiver of all non-jurisdictional defects that occurred before a guilty plea entered
without the benefit of an agreed sentencing recommendation, other than the voluntariness
of the plea, occurs when the judgment of guilt was rendered independent of, and is not
supported by, the claimed error. (19) A claim of ineffective assistance may or may not have
a direct nexus with a defendant's guilt or innocence. (20) A judgment of guilt is not rendered
independent of, and is not supported by, a claim of ineffective assistance when there is no
evidence that the defendant would have pleaded not guilty had it not been for his counsel's
alleged ineffectiveness. (21)

Analysis 


 The State argues that by entering an open plea of guilty, appellant waived the right
to appeal any nonjurisdictional defects, other than the voluntariness of his plea, that
occurred before entry of the plea, so long as the judgment of guilt was rendered
independent of, and is not supported by, the alleged error. (22) The State notes that: 

[a]ppellant has never testified, or claimed, that the trial court's alleged lack
of admonishments, or his counsel's alleged actions, caused him to plead
guilty where otherwise he would not have, nor that he would not have pled
guilty, but would have gone to trial but for such alleged lack of
admonishments or his counsel's alleged ineffectiveness. 


Thus, the State argues, appellant has failed to establish any "direct nexus" between the
alleged errors--the lack of admonishments and ineffective assistance--and his innocence
or guilt, and has therefore waived both of those claims. (23) 

 We agree with the State that appellant has not claimed, either to the trial court or
on appeal, that but for the alleged lack of admonishments or his counsel's alleged
ineffectiveness, he would not have pleaded guilty and would have gone to trial. (24) Thus, we
tend to agree with the State that appellant has waived his admonishment and ineffective
assistance claims. (25) However, because both claims are arguably related to appellant's
voluntariness claim, we will, out of an abundance of caution, review all of the claims
together.

 Appellant argues that he was not admonished as to the range of punishment and 
was not aware of the consequences of his plea. In support, appellant notes that the written
admonishments reflect that although he initialed eleven of the admonishments, he did not
initial the admonishment as to the range of punishment. Appellant also points to his
testimony at the hearing on his motion to reconsider that he "wasn't aware of the
extremities of the--of the consequences of whatever was going to result on the case." He
also testified that he "wasn't to know [sic] that [he] was going to get a life sentence for not
taking that plea bargain or whatever they had offered [him] at first." (26)

 At appellant's plea hearing, appellant's counsel questioned appellant as follows:

[Appellant's counsel]: Do you understand that if the Judge does find the
enhancements to the fact that you've been to prison twice before, if he finds
those to be true, you're looking at anywhere from 25 to life; is that right?


[Appellant]: Yes, sir. 


On cross-examination, the State asked appellant:


[Prosecutor]: Okay. And you understand that you're what's called a "HFO." 
You're 25 to life. You're basically what we call "habitual drug dealer," right?


[Appellant]: Yes, ma'am. 


 At the hearing on appellant's motion for reconsideration, on cross-examination by
the State, the appellant testified:

[Prosecutor]: Okay. But [appellant's counsel] did explain to you that the
range of punishment on this case, if you didn't take the deal, was a minimum
of 25 because of the habitual felony offender status, remember?


[Appellant]: Yes, ma'am.


[Prosecutor]: And he did tell you that you could get up to life in prison, even
though he may not have thought I would ask for it, right? You knew it was
a possibility?


[Appellant]: Yes, ma'am.


[Prosecutor]: You just didn't know I was going to do it?


[Appellant]: Yes, ma'am. 


[Prosecutor]: So when you signed off on the paperwork, you knew very well
that you were looking at anywhere from probation that you were going to ask
for, up to life in prison, right?


[Appellant]: Yes, ma'am.


[Prosecutor]: And you signed it anyway?


[Appellant]: Yes, ma'am.


[Prosecutor]: And so your shock is at the outcome, not at the
recommendation, correct?


[Appellant]: Well, really at both of them. 


 Appellant's trial attorney also testified at the hearing on the motion for
reconsideration:

[Appellant's appellate counsel]: Okay. And so when you came into Court
that day, and when you and [appellant]--you knew [appellant] was going to
ask for [probation], do you think [appellant] understood that potentially the
State was going to recommend a life sentence as punishment? Did he
understand that?


[Appellant's trial counsel]: No, he did not understand that the State would be
asking for a life sentence. He certainly understood the full range of
punishment at the time, however.


[Appellate counsel]: Do you think that he had the--do you think that he
knowingly, intentionally and voluntarily came before the Court on an open
plea?


[Trial counsel]: Oh, yes. Most definitely, yes.


. . . .


I then spent I want to say at least 30 to 45 minutes--and again this is the
fourth setting where I had gone over the plea papers, where I had explained
to [appellant] that if he goes open to the Court, he's looking at the full range
of punishment with a minimum of 25 years. We went through that at length.


 Now, when you asked me whether or not [appellant] appreciated the
fact that he was looking at life, he certainly did not, but he was certainly
aware of the full range of punishment.


 Now would I agree with you that he was shocked that the prosecutor
asked for life? Yes. Would I agree with you that I was shocked that the
Court gave him life? Yes. But [appellant] was fully aware that was certainly
a possibility. 


 Here, the written admonishments, signed by appellant, reflect a "check" by the
"habitual felony offender" paragraph, which stated that the range of punishment for habitual
felony offender status is twenty-five years to life. Appellant's signature appears at the end
of the written admonishments. Moreover, the record establishes that appellant was
advised of the range of punishment and testified that he understood it. On cross-examination, appellant testified that he understood that he was an "HFO" and was "25 to
life." Even if we were to assume, without deciding, that the absence of appellant's initials
next to the range-of-punishment paragraph somehow rendered the written admonishments
defective, the record contains no evidence that appellant was unaware of the
consequences of his plea or that he was misled or harmed by any alleged failure by the
trial court to properly admonish him. (27) We overrule appellant's first issue. 

 By his second issue, appellant contends he "did not knowingly, voluntarily, and
freely plead guilty." Appellant argues his plea was involuntary because he was not
admonished by the trial court and did not have effective assistance of counsel. By his third
issue, appellant contends his counsel was ineffective because counsel "did not ensure that
[appellant] reviewed and signed the range-of-punishment admonishment." 

 We find appellant's arguments to be without merit. At the plea hearing, appellant
testified that he was entering his guilty plea "freely and voluntarily" and that he had decided
to reject the State's ten-year plea bargain offer. At the motion-for-reconsideration hearing,
appellant's trial counsel testified that he advised appellant to take the State's ten-year offer,
and was "shocked" when appellant decided to reject the offer. Appellant testified that his
trial counsel had advised him that the range of punishment was twenty-five years to life and
that he knew a life sentence was a possibility. Appellant testified that he just "didn't really
think [he] was going to get a life sentence." Appellant told the trial court he was asking the
court for "mercy." 

 A plea is not rendered involuntary simply because a defendant received a greater
punishment than he anticipated. (28) As the court of criminal appeals noted in Burnett,

It is important to distinguish appellant's factual knowledge (or lack thereof)--
that the applicable range of punishment for his enhanced offense was 5
years-to-life--from his ability to judge the risk that he would actually receive
a sentence at the high end of the punishment range. It is the former,
appellant's factual knowledge of the punishment range, with which we are
concerned. (29) 


 We conclude appellant has failed to meet his burden to demonstrate that his
plea was not voluntary. (30) Appellant has also failed to show that his counsel's
representation fell below an objective standard of reasonableness and that there is
a reasonable probability that, but for his counsel's errors, he would have pleaded
not guilty and insisted upon going to trial. (31) We overrule appellant's second and
third issues.

 Finally, as a sub-issue, appellant asserts that "[t]he trial court has the
discretion to grant a new trial in the interests of justice . . . ." However, appellant
provides no argument explaining how the trial court may have abused its discretion
in denying his motion for new trial. Accordingly, appellant has waived any challenge
to the trial court's denial of his motion for new trial. (32) 

 We affirm the trial court's judgment. 



 

 LINDA REYNA YAÑEZ,

 Justice






Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 19th day of July, 2007.

 

 

 

 

 

 


 

 
1. See Tex. Health & Safety Code Ann. § 481.112(a)((d) (Vernon 2003).
2. See Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2006). 
3. See Tex. Code Crim. Proc. Ann. art. 26.13(a) (Vernon Supp. 2006); Pena v. State, 132 S.W.3d 663,
665 (Tex. App.-Corpus Christi 2004, no pet.). 
4. See Tex. Code Crim. Proc. Ann. art. 26.13(d) (Vernon Supp. 2006); Pena, 132 S.W.3d at 665. 
5. See Tex. Code Crim. Proc. Ann. art. 26.13(d) (Vernon Supp. 2006); Pena, 132 S.W.3d at 665. 
6. See Tex. Code Crim. Proc. Ann. art. 26.13(c) (Vernon Supp. 2006).
7. Burnett v. State, 88 S.W.3d 633, 638 (Tex. Crim. App. 2002). 
8. Pena, 132 S.W.3d at 666 (citing Martinez v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998);
Ex parte Gibauitch, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985); Dorsey v. State, 55 S.W.3d 227, 235 (Tex.
App.-Corpus Christi 2001, no pet.)). 
9. Id. 
10. Id. 
11. Id.
12. Hinkle v. State, 934 S.W.2d 146, 149 (Tex. App.-San Antonio 1996, pet. ref'd); Tovar-Torres v.
State, 860 S.W.2d 176, 178 (Tex. App.-Dallas 1993, no pet.). 
13. Ex parte Moody, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999). 
14. Id. at 858.
15. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
16. Id. 
17. Id. 
18. Id. 
19. Martinez v. State, 109 S.W.3d 800, 801 (Tex. App.-Corpus Christi 2003, pet. ref'd) (citing Young
v. State, 8 S.W.3d 656, 666-67 (Tex. Crim. App. 2000) (en banc)).
20. Id. at 803. 
21. Id.
22. See Young, 8 S.W.3d at 666-67. 
23. See Martinez, 109 S.W.3d at 803 (noting that guilty plea waives claim of ineffective assistance
where no "direct nexus" between claimed ineffectiveness and the defendant's guilt or innocence).
24. At the hearing on appellant's motion for reconsideration, appellant asked the trial court to (1) place
him on probation or (2) impose the ten-year sentence initially offered by the State. Appellant did not seek to
withdraw his plea and go to trial. 
25. See id. 
26. The State had offered appellant ten years' imprisonment, with an agreement to drop the
enhancement paragraphs. It is undisputed that appellant rejected the State's offer. 
27. Burnett, 88 S.W.3d at 638. 
28. Hinkle, 934 S.W.2d at 149; Tovar-Torres, 860 S.W.2d at 178.
29. Burnett, 88 S.W.3d at 639 n.22 (emphasis in original). 
30. See Martinez, 981 S.W.2d at 197. 
31. See Pena, 132 S.W.3d at 668-69; Ex parte Moody, 991 S.W.2d at 858.
32. See Tex. R. App. P. 38.1(h); In the Matter of A.J.G., 131 S.W.3d 687, 691-92 (Tex. App.-Corpus
Christi 2004, pet. denied).