**Opinion issued January 22, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00203-CR**

————————————

**RICHARD CHARLES RIETTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1395252**

---

## MEMORANDUM OPINION

Appellant, Richard Charles Riette, was charged by indictment with evading arrest with a motor vehicle.[1] Appellant pleaded not guilty. The jury found him guilty, and the trial court sentenced him to three years' confinement and a $500

---

[1]  *See* TEX. PENAL CODE ANN. § 38.04(a) (Vernon Supp. 2014).

fine. The trial court suspended the sentence and placed Appellant on community supervision for three years. In one issue on appeal, Appellant argues that the trial court abused its discretion by admitting the State's demonstrative evidence.

We affirm.

## Background

It is undisputed that, around 2:00 a.m. on July 21, 2013, Appellant was speeding along some streets in Harris County without stopping at the intersections. Officer J. Lane, an officer with the Harris County Constable Precinct Five, was traveling north on Elrod Road that night. Officer Lane was nearing the north end of the road when Appellant turned from Morton Ranch Road. Appellant turned into Officer Lane's side of the road, forcing Officer Lane to partially drive off of the road. Both Officer Lane and Appellant had their windows down. As Appellant drove by, Officer Lane yelled, "Hey!"

Appellant continued. Officer Lane turned his car around, activated his lights and siren, and pursued Appellant. Officer Lane estimated that Appellant was driving over 100 miles per hour, requiring Officer Lane to accelerate to 120 to 130 miles per hour in order to close the distance between them. Elrod Road is about one mile long. Officer Lane estimated that, during the chase, his furthest distance from Appellant was about 12 to 15 car lengths and his closest distance was about 4 car lengths.

2

At the south end of Elrod, Appellant swerved left into the opposing traffic lane and then turned right onto Franz Road. About one quarter-mile later, Appellant turned right onto John Crump Lane, which leads into a residential subdivision. Three blocks later, Appellant turned right again, onto Braken Carter Lane. Some distance down this street, Appellant came to an abrupt stop.

Officer Lane drew his firearm. He ordered Appellant out of the car and onto the ground. He placed Appellant under arrest. Appellant testified that he could not see the officer, or whether the officer was holding a firearm, because the lights from the police car were so bright.

Six months later, on the eve of trial, Officer Lane and the prosecutor in Appellant's case retraced the route Officer Lane traveled while avoiding and then chasing Appellant. They recorded the process on a dashboard video camera in the car. At trial, the State offered the video as a demonstrative exhibit for "some perspective as to the route that was taken." Appellant objected, claiming the video was not substantially similar to the events leading up to the arrest and that the video was more prejudicial than probative. Specifically, Appellant complained that one of the intersections had been under construction at the time of the arrest and that Officer Lane traveled farther on Braken Carter Lane in the demonstrative video than he and Appellant had traveled on the night of the arrest.

The trial court denied the objections and permitted the video to be shown to the jury. The court admonished,

> Ladies and gentlemen, I'm going to allow the State to play State's Exhibit No. 5. It is admitted for demonstrative purposes only. It is not the actual video for that night. It is a video that was produced later in order to aid you in this particular case. But it is not going to— it is not going to be admitted as evidence. It is only for what we call demonstrative purposes to help you perhaps understand the location and scene that evening.

## Admission of Demonstrative Evidence

In his sole issue, Appellant argues that the trial court abused its discretion by admitting the State's demonstrative evidence.

## A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). We will uphold an evidentiary ruling if it is correct on any theory of law applicable to the ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

If demonstrative evidence is erroneously admitted, the error is non-constitutional. *See* Tex. R. App. P. 44.2(b); *Orrick v. State,* 36 S.W.3d 622, 627 (Tex. App.—Fort Worth 2000, no pet.). We must disregard non-constitutional

4

error unless it affects an appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Robinson v. State*, 236 S.W.3d 260, 269 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). An error affects a substantial right only when the error had a substantial and injurious effect or influence on the jury's verdict. *Robinson*, 236 S.W.3d at 269 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). We cannot reverse a criminal conviction unless we have "'a grave doubt' that the result was free from the substantial influence of the error . . . . 'Grave doubt' means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S. Ct. 992, 994 (1995)).

## B. Analysis

In his brief, Appellant argues the video was inadmissible both because it was not substantially similar to the underlying event and because it was more prejudicial than probative. The State argues that at least some of Appellant's arguments have been waived. We hold that, even assuming that all of Appellant's complaints were preserved and that the admission was erroneous, the error is harmless.

In assessing the likelihood that the jury's decision was adversely affected by the error, we "consider everything in the record, including testimony and physical

5

evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error[,] and how it might be considered in connection with other evidence in the case." *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory, any defensive theories, closing arguments, whether the State emphasized the error, and even voir dire, if applicable. *Id.* at 355–56.

"A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting to lawfully arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a) (Vernon Supp. 2014). The path of travel was not in question at trial. Furthermore, Appellant acknowledged that he was speeding during the time in question. He also acknowledged that he did not come to full stops at the turns. The only issue in dispute between the parties was whether Appellant was aware that an officer was attempting to detain him. Appellant claimed he had horrible eye sight, he was wearing sunglasses, the rear window to the car was filthy, and he was blasting music loudly inside his car with the windows up. The State argued that it would have been impossible for the Appellant not to have been aware of Officer Lane's lights and sirens while driving for a mile on a straight road.

The video certainly could not directly show that Appellant was aware of Officer Lane's lights and siren. What indirect proof the video offered was already

6

established by other evidence. For example, the video showed that Elrod was a long, straight road. The only mention of the video in the State's closing was the statement that the video showed the path traveled by Appellant and Officer Lane. Even so, as the State also mentioned in closing, other evidence established the route traveled as well. A map of the immediate area was admitted into evidence. That map shows that Elrod is a long, straight road. Officer Lane testified that the road is about a mile long and that the pursuit was down the length of the road. He also testified that, after being 12 to 15 car lengths behind Appellant, he reduced the distance to about four car lengths.

The video also shows fences and signs along the road that could have reflected Officer Lane's lights. Officer Lane also testified, however, that "all these signs, all the reflective signs would be flashing. The fences would be flashing. I mean, everything would be strobing." Futhermore, the lights were not activated in the video. Accordingly, the video does not demonstrate the effect of the lights on the surrounding objects.

Appellant argues that the video was harmful because it suggested that the pursuit went further down Braken Carter Lane than the other evidence establishes. The parties disputed where Appellant came to a stop on Braken Carter Lane. But all parties acknowledged that the car in the video went further than either party

claimed. The jury was told this multiple times. We have no reason to believe that the video would have caused the jury to disregard this undisputed testimony.

We hold that any error in the admission of the video did not have a substantial and injurious effect on the jury's guilt determination. We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).