

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00217-CR
No. 07-21-00218-CR

---

**JOHN WAYNE WOODALL, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 91st District Court
Eastland County, Texas[1]
Trial Court Nos. 25943, 26171, Honorable Steven R. Herod, Presiding

---

July 8, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

In two cases consolidated for trial, a jury convicted appellant, John Wayne Woodall, of burglary of a habitation and assault.[2]  The trial court found "true" the enhancement allegation that appellant is a repeat felony offender and assessed his

---

[1] Originally appealed to the Eleventh Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001.

[2] *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 30.02(c)(2).

punishment at confinement for fourteen years for the burglary charge and one year for the assault charge, with the sentences to run concurrently. In a single issue on appeal, appellant asserts that the trial court abused its discretion by admitting extraneous act evidence over his objection. We affirm.

## BACKGROUND

Appellant does not challenge the sufficiency of the evidence supporting his convictions. Therefore, we limit our discussion to the evidence that is necessary to understand the issue he raises on appeal. The evidence showed that on July 17, 2020, appellant went to the home of Rachel Simpson to discuss repayment of the $100 he had loaned her. Appellant did not see Simpson, but he had a brief discussion with Eddy Velasquez, who was dating Simpson's daughter, outside the home before leaving. A short time later, appellant returned with a companion, Adam Bonvillain. Simpson's son, Kane Wilson, opened the door to the house and appellant and Bonvillain forced their way inside. Appellant then said, "Who's first?" Appellant and Bonvillain began hitting Velasquez and Wilson, who both fought back. Soon, Wilson's friend, Tomas Rodriguez, came inside the house and was also struck by appellant. Eventually, Velasquez and Wilson "stayed down." Appellant and Bonvillain searched the house for Simpson and left when they did not find her. Appellant was subsequently charged with burglary of a habitation and injury to a disabled person.

Prior to trial, appellant filed a motion in limine relating to "any evidence that [appellant] is affiliated with a criminal street gang, biker gang, criminal organization, or other affiliation of persons connected to criminal activity." The trial court granted the

2

motion.[3]  Accordingly, at trial, counsel for the State approached the bench for a ruling before questioning a witness about appellant's relationship with a particular group.  The witness, Velasquez, was taken on voir dire, outside the presence of the jury, and he explained that following the incident, he contacted a man named Michael Post.  Velasquez explained that Post and appellant were in a group called Keepers of the Faith and Post was "the president of their crew."  Velasquez stated that he was concerned for the safety of his girlfriend, their child, and Simpson, because of the incident and because of other encounters between Simpson and appellant.  According to Velasquez, Post "said it would be taken care of as they were in the wrong," but Velasquez did not know how the matter would be handled.  Counsel for the State explained that she desired to elicit this testimony from Velasquez to establish that Simpson was concerned about retaliation.

When the trial court asked if he had any objection, appellant's counsel stated, "Yes, Judge.  That's very abstract.  I've got concerns.  I've got concerns.  I've got concerns.  We've got motorcycles, we've got gang being thrown around.  Link them together.  There's no link between the true faith.  That's no link to Mike Post.  That's not there."  After further discussion, the trial court concluded the bench conference by stating it would allow the State to proceed.

Upon the jury's return, the State elicited the testimony from Velasquez that appellant challenges on appeal.  Velasquez stated that he "didn't want [this matter] to come to court" and that he tried to make peace.  Velasquez testified that he wrote a

---

[3] Appellant states that the trial court "overruled" his motion in limine, but the order in the clerk's record reflects that appellant's motion was granted.

3

statement about the incident for Post. He approached Post because "[h]e's the president, he's chief of the Indians" and appellant and Bonvillain "are members." Velasquez believed that Post had influence over appellant and Bonvillain. Velasquez had concerns about retaliation against his family, including his girlfriend, their infant daughter, and his girlfriend's mother, Simpson. He stated that he left his statement with Post and that, after their visit, he had no further contact with appellant or Bonvillain.

Later in the proceedings, Simpson was asked whether she recalled telling the police chief that she was concerned about retaliation. She answered, "I was[,] just because [appellant] knows – I mean, there's a lot of people that know him. I didn't think anybody in particular would; I was just worried about just in general." Appellant made no objection to this testimony. In his testimony, appellant identified Post as his "preacher."

## ANALYSIS

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*

Here, appellant contends that the trial court erred in admitting evidence "that [appellant] was a member of a local motorcycle gang" and had "dealings with the president of a group of bikers." According to appellant, this testimony served only to demonstrate that he was "a bad guy" and, thus, was inadmissible extraneous-offense evidence. *See Pondexter v. State*, 942 S.W.2d 577, 583–84 (Tex. Crim. App. 1996) (en

4

banc) (gang affiliation is considered to be evidence of an "other crime, wrong or act" subject to exclusion under Rule 404(b)).

We observe that the jury heard no references to "a local motorcycle gang" or to "a group of bikers." The statements appellant complains of appear to be those made by Velasquez on voir dire, when he stated that Post is "the president of their crew or a biker – I don't know what you call it." Before the jury, there was no reference made to a motorcycle gang, any other type of gang, or "Keepers of the Faith." There was no testimony concerning appellant's, Post's, or their group's activities or reputation. In short, the testimony at trial did not make it obvious that appellant was involved in a motorcycle gang.

Even if this scant evidence supported an inference that appellant was affiliated with a gang, and assuming without deciding that the trial court erred in admitting the evidence and that appellant preserved his complaint regarding its admission, we conclude that any error was harmless. *See* TEX. R. APP. P. 44.2(b) (providing that any error, other than constitutional error, that does not affect substantial rights must be disregarded). A substantial right is affected when, after reviewing the record as a whole, a court concludes the error had a substantial and injurious effect or influence on the outcome of the proceeding. *See Burnett v. State*, 88 S.W.3d 633, 637 & n.8 (Tex. Crim. App. 2002). To conduct a harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the trial court's instructions to the jury, the State's theory, any defensive theories, closing arguments, and even voir dire when appropriate. *See Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).

5

We also consider the nature of the evidence supporting the verdict, the character of the alleged error, and the weight of the evidence of appellant's guilt. *Id.*

The evidence suggesting that appellant had a connection to a motorcycle gang was a very small part of the total evidence introduced during the trial of this case. After carefully reviewing the record, we conclude that the evidence could have had only a negligible influence on the jury's verdict. Accordingly, any error in the admission of the complained-of testimony was harmless, and we overrule appellant's issue. *See* TEX. R. APP. P. 44.2(b).

Our review of the record reveals an error in the trial court's judgment in trial court cause number 25943. The judgment indicates that appellant pleaded "true" to the enhancement paragraph. However, the record reflects that appellant pleaded "not true" to the allegation. We are authorized to reform judgments sua sponte to make the record speak the truth. "The Texas Rules of Appellate Procedure give us authority to reform judgments and correct typographical errors to make the record speak the truth." *Torres v. State*, No. 07-13-00179-CR, 2014 Tex. App. LEXIS 2664, at *4–5 (Tex. App.—Amarillo Mar. 7, 2014, no pet.) (mem. op., not designated for publication) (citing TEX. R. APP. P. 43.2, and *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (en banc)). We reform the judgment in trial court cause number 25943 to accurately reflect appellant's plea of "not true" to the State's enhancement allegation.

## CONCLUSION

We reform the judgment in trial court cause number 25943 to reflect that appellant pleaded "not true" to the enhancement paragraph.  We overrule appellant's sole issue and affirm the judgments of the trial court as reformed.


Judy C. Parker
Justice

Do not publish.